HALE ET AL. *v.* PORTSMOUTH RECEIVING HOSPITAL OF THE
DEPT. OF MENTAL HYGIENE.

(No. 75-0104—Decided July 2, 1975.)

Court of Claims.

*Mr. Franklin T. Gerlach,* for plaintiffs.
*Mr. Ronald B. Brown,* assistant attorney general, for defendant.

TROOP, J.  On January 10, 1975, plaintiffs filed a complaint in this court.  The first five paragraphs of the complaint alleged that:

"1. Defendant, Portsmouth Receiving Hospital, Portsmouth, Ohio, is a State Mental Institution providing services to the mentally ill for the state of Ohio. * * *

"2. On or about March of 1973, plaintiff Norma Ann Hale was admitted to the Portsmouth Receiving Hospital for professional medical care concerning her mental health. Walter Cowan, M. D., an employee of defendant, with expertise in treatment undertook to treat her for mental illness at the Portsmouth Receiving Hospital.

"3. Walter Cowan, M. D. changed medication the plaintiff Norma Ann Hale was on and refused to make a change in said medication after observing ill effects of change and after being told of adverse reaction causing depression and self destructive mood in the plaintiff Norma Ann Hale.

"4. Walter Cowan, M. D. refused to admit the plain-

tiff Norma Ann Hale to the Portsmouth Receiving Hospital on two occasions full well knowing self destruction voices were being heard by the plaintiff Norma Ann Hale.

"5. The defendant failed to supervise or instruct its staff in the proper care of mentally ill patients and failed to give the skill, care and attention for the treatment and safety of the plaintiff Norma Ann Hale resulting proximately in and causing her to attempt self destruction by drinking liquid Drano at her home * * * on May 22, 1973, causing extensive personal injury * * *."

Plaintiff Norma Ann Hale seeks compensation for her injuries, including pain and suffering. Plaintiff Harlan Chandis Hale, husband of Norma Ann, seeks compensation for medical expenses incurred on behalf of his wife and for loss of consortium.

On February 11, 1975, defendant, represented by the attorney general, filed a motion in which it requested this court "to dismiss these causes of action * * * for failure to state a claim upon which relief can be granted or in the alternative * * * for summary judgment as a matter of law." In arguing the merits of this motion, both parties have relied upon matters outside the pleadings, and hence this court notified the parties that the motion would be treated as one for summary judgment. See Civ. R. 12 (B).

The defendant's motion advances three independent reasons for dismissing plaintiffs' complaint. This court rejects all three.

Defendant asserts that plaintiffs' causes of action are barred by the statute of limitations. Defendant's memorandum in support of its motion sets forth the following argument relative to the statute of limitations:

"A cause of action for malpractice is governed by the statute of limitations set forth in Section 2305.11 Ohio Revised Code. Section 2305.11 states that an action for malpractice must be commenced within one year from the time the cause of action accrues.

"Plaintiffs' complaint states that the negligence alleged occurred on or before May 22, 1973. The complaint in this action was filed on January 10, 1975, which date is

in excess of seven months past the one year statute of limitations.

"The state waived sovereign immunity by enactment of Amended Substitute House Bill No. 800. This act sets the parameters within which the state may be sued. Section 3 of the Act states that prior to July 1, 1975 a cause of action will be timely, 'if commenced within two years of accrual of the cause of action or if commenced within whatever period of limitations would have been applicable to the particular cause of action if commenced against a private party.'

"It is contended by the state that the two year limitation set forth in Section 3 is an interim general statute of limitations applicable to the types of actions not cognizable prior to the state's waiver of sovereign immunity, and for which there are no established statutes of limitations. On the other hand, where the cause of action has already been recognized in suits between private parties, the statute of limitations applicable to suits between private parties must be applied.

"In the instant controversy malpractice actions between private parties have long been recognized, and it has long been the law of Ohio that they must be commenced within one year. Plaintiff Norma Ann Hale has failed to commence her cause of action within the one year limitation required by Section 2305.11 of the Revised Code, and Section 3 of the Amended Substitute House Bill 800."

This court rejects defendant's interpretation of the quoted portion of Section 3 of Amended Substitute House Bill No. 800. The permanent statute of limitations for claims against the state is found in R. C. 2743.16 (A). Generally, the period allowed by that statute for commencing suit is two years from the date the cause accrued. The intent of the General Assembly in enacting the quoted portion of Section 3 was to retroactively waive sovereign immunity for those actions which accrued in the two year period preceding January 1, 1975—the effective date of Amended Substitute House Bill No. 800—with the exception that if a statute of limitations in excess of two years would have been applicable if the action were instituted

against a private party, the claimant is entitled to utilize the longer period. If the legislature intended to incorporate into Section 3 those statutes of limitations of less than two years' duration, it would have done so in unambiguous language.

Plaintiffs' complaint, which was filed prior to July 1, 1975, was filed within two years of the time their causes of actions allegedly accrued. The actions are not barred by the statute of limitations.

Defendant invokes the doctrine of "official immunity" as an alternative reason for dismissing plaintiffs' complaint. In its memorandum in support of the motion for summary judgment, defendant defines the doctrine as: "The general principle * * * that state and federal officials are immune for their torts resulting from the exercise of discretion or judgment within the scope of their authorization." Defendant asserts that "official immunity" shields Doctor Cowan from liability and that this shield inures to the benefit of defendant, Doctor Cowan's employer.

There is, in some jurisdictions in this country, a doctrine variously denominated as "official immunity," "officer immunity," or "executive immunity." Davis, Administrative Law Treatise, Section 26.01 (1970 Supp.). The premier case setting forth the doctrine and its underlying rationale is *Barr* v. *Matteo* (1959), 360 U. S. 564. That case held that a federal official exercising discretion is absolutely immune from liability for acts committed in the scope of his authority. Mr. Justice Harlan, writing the majority opinion, stated:

"The reasons for the recognition of the privilege have been often stated. It has been thought important that officials of government should be free to exercise their duties unembarrassed by the fear of damage suits in respect of acts done in the course of those duties—suits which would consume time and energies which would otherwise be devoted to governmental service and the threat of which might appreciably inhibit the fearless, vigorous, and effective administration of policies of government. The matter has been admirably expressed by Judge Learned Hand:

" 'It does indeed go without saying that an official,

who is in fact guilty of using his powers to vent his spleen upon others, or for any other personal motive not connected with the public good, should not escape liability for the injuries he may so cause; and, if it were possible in practice to confine such complaints to the guilty, it would be monstrous to deny recovery. The justification for doing so is that it is impossible to know whether the claim is well founded until the case has been tried, and that to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties. Again and again the public interest calls for action which may turn out to be founded on a mistake, in the face of which an official may later find himself hard put to it to satisfy a jury of his good faith. There must indeed be means of punishing public officers who have been truant to their duties; but that is quite another matter from exposing such as have been honestly mistaken to suit by anyone who has suffered from their errors. As is so often the case, the answer must be found in a balance between the evils inevitable in either alternative. In this instance it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation. . . .

" 'The decisions have, indeed, always imposed as a limitation upon the immunity that the official's act must have been within the scope of his powers; and it can be argued that official powers, since they exist only for the public good, never cover occasions where the public good is not their aim, and hence that to exercise a power dishonestly is necessarily to overstep its bounds. A moment's reflection shows, however, that that cannot be the meaning of the limitation without defeating the whole doctrine. What is meant by saying that the officer must be acting within his power cannot be more than that the occasion must be such as would have justified the act, if he had been using his power for any of the purposes on whose account it was

vested in him. . . .' *Gregoire* v. *Biddle*, 177 F. 2d 579, 581." 360 U. S. at 571-72.

It is clear that the purpose of "officer immunity," as its name suggests, is to protect the individual governmental employee whose allegedly wrongful acts caused damages. The doctrine was never intended to shield the governmental entity; in other words, to paraphrase defendant's argument, the protection of "officer immunity" does not inure to the benefit of government. Assuming a waiver of sovereign immunity, if a governmental employee's actions are both legally culpable and the proximate cause of damage, the damaged party may sue the government even though the employee is protected by an immunity. See *Estate of Burks* v. *Ross* (6th Cir. 1971), 438 F. 2d 230 (footnote 1).

The factual allegations of plaintiffs' complaint are sufficient to assert negligence on the part of Doctor Cowan. *Estate of Burks* v. *Ross, supra*; *Supchak* v. *United States* (3d Cir. 1966), 365 F. 2d 844; *White* v. *United States* (4th Cir. 1963), 317 F. 2d 13. These allegations have not been refuted by any of the documents submitted by defendant in support of its motion for summary judgment. Whether or not Doctor Cowan is entitled to "officer immunity" is a question this court need not answer; Doctor Cowan is not a party to the lawsuit filed by plaintiffs in this court.

The final reason advanced by defendant to support its motion for summary judgment is that plaintiffs' causes of action in this court are barred by the doctrine of *res judicata*. The factual basis of this assertion is a 1973 complaint filed in the Scioto County Common Pleas Court by plaintiffs against Doctor Cowan individually. The allegations contained in and the relief sought by that complaint are virtually identical to the complaint filed in this court. The Scioto County Common Pleas case terminated in 1974 with a judgment entry dismissing the complaint for failure to state a claim upon which relief could be granted. The judgment entry was premised on the court's adoption of "the doctrine that executive officers of the state * * * are immune from civil suits for torts committed in the exercise of discretion within the scope of their powers."

Defendant argues that the decision of the Scioto County Common Pleas Court is conclusive as to the issue of negligence of Doctor Cowan *and* the state of Ohio. This argument is untenable. Paragraph 1 of the syllabus of *Whitehead* v. *Genl. Tel. Co.* (1969), 20 Ohio St. 2d 108, declares:

"A final judgment or decree rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction, is conclusive of rights, questions and facts in issue as to the parties and their privies, and is a complete bar to any subsequent action upon the same cause of action between the parties or those in privity with them. The prior judgment is *res judicata* as between the parties or their privies. (Paragraph No. 1 of syllabus of *Norwood* v. *McDonald,* 142 Ohio St. 299, approved and followed.)"

The judgment of the Scioto County Common Pleas Court, dismissing the complaint against Doctor Cowan, was not a judgment on the merits of plaintiffs' complaint against an agency of the state of Ohio. In fact, at the time the Scioto County court issued its judgment, the state had not waived sovereign immunity. The Scioto County Common Pleas decision terminated the lawsuit prior to any determination of whether or not Doctor Cowan was negligent in his treatment of plaintiff Norma Ann Hale. The judgment of that court was predicated upon a holding that Doctor Cowan was protected by "officer immunity." For the reasons mentioned above, that holding is irrelevant in this lawsuit. The final judgment of the Scioto County Common Pleas Court was not a judgment pertaining to the merits of plaintiffs' complaint filed in this court.

*Defendant's motion is overruled.*