[Civ. No. 44587. Second Dist., Div. Two. July 15, 1975.]

HELEN ALVA et al., Plaintiffs and Appellants, v.
WILMA COOK et al., Defendants and Respondents.

## COUNSEL

Abrams, Fox, Gibson & O'Rourke and Harry D. Fox for Plaintiffs and Appellants.

Wilson, Borror & Dunn and James R. Dunn for Defendants and Respondents.

## OPINION

**ROTH, P. J.**—On February 16, 1973, at 3 p.m., Michael Edward Alva, accompanied by his fiance Julie Gonzales, drove his car into the driveway of premises owned by respondent sisters Wilma Cook and Mildred Pinkston, to effectuate a north to south change in travel, and was shot and killed by Malcolm Pinkston, age 62, for whom respondents provided and had for some years prior thereto provided a home on the premises. Malcolm was later convicted after a guilty plea of murder in the second degree. (Pen. Code, § 189; superior court case No. A 516 180.)

Appellants, Helen Alva, Michael Alva, and Julie Gonzales, the parents and fiancee, respectively, of deceased, as a consequence of the death resulting from the shooting sued respondents in 10 causes of action[1] which were successively amended until a general demurrer was sustained without leave to all 10 causes (herein referred to as complaint). Appeal is from the judgment of dismissal thereafter entered.

Appellants concede in their reply brief that the respective 10 causes, although independently stated on different theories are based on the legal principle ". . . that respondents fall . . . within the . . . class of cases. [which] . . . exemplify an evolution from a rule of 'no duty' to a rule in which imposition of a duty of care depends upon the foreseeability of serious injury . . . a defendant [who] commences to render services, . . . must employ reasonable care . . . ."

■ The principle is tersely stated in *Dillon* v. *Legg* (1968) 68 Cal.2d 728 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316], " . . . the law of

[1]Originally there were 14 causes. The first two of which included Malcolm as a defendant and the last two were against Doe defendants. The two causes of action against Malcolm have been abandoned as well as the last two against Doe defendants.

torts holds defendant amenable only for injuries to others which to defendant at the time were reasonably foreseeable." (68 Cal.2d 728, 739.)

In addition to *Dillon* the pertinent cases upon which appellants rely are: *Rowland* v. *Christian* (1968) 69 Cal.2d 108 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496]; *McGarvey* v. *Pacific Gas & Elec. Co.* (1971) 18 Cal.App.3d 555 [95 Cal.Rptr. 894], and *Morgan* v. *County of Yuba* (1964) 230 Cal.App.3d 938, 943-944 [41 Cal.Rptr. 508].)

We gather from the cases that liability is incurred in torts when a person at the time of a negligent act or omission should reasonably foresee that such act or omission could be the proximate cause of damage to another. ■ Applied to the occupier of premises *Rowland* requires that the occupier of premises in the management of his property must act as a reasonable man in view of the probability of injury to others whether they be invitees, licensees, or trespassers. This rule has been extended to nonoccupying landlords with knowledge of a dangerous situation on the premises ignored by a tenant occupier. (*Uccello* v. *Laudenslayer* (1975) 44 Cal.App.3d 504, 514 [118 Cal.Rptr. 741].)

■ " 'A demurrer reaches only to the contents of the pleading and such matters as may be considered under the doctrine of judicial notice.' [Citations]; the material and issuable facts pleaded . . . must be regarded as true [citations]; a demurrer does not, however, admit *contentions, deductions or conclusions of fact or law* alleged in the complaint [citations], or facts impossible in law [citation] *or allegations contrary to facts of which a court may take judicial knowledge.*" (Italics added.) (*Holmes* v. *City of Oakland* (1968) 260 Cal.App.2d 378, 382 [67 Cal.Rptr. 197].) A general demurrer should be overruled if it appears from such analysis that judicial relief is warranted even though alleged facts are not clearly stated or have been intertwined with irrelevant facts or the wrong relief is prayed. (*Hilltop Properties* v. *State of California* (1965) 233 Cal.App.2d 349, 354 [43 Cal.Rptr. 605, 37 A.L.R.3d 109].)

■ We first analyze and construe the complaint without its augmentation by judicial notice.

The unverified allegations upon which appellants rely are: respondents' ownership and management of the premises upon which the killing occurred which is conceded; Malcolm was the brother of respondents at the time of the shooting, which is conceded; for many years prior thereto he was unable to care for himself because of mental

defects; mental illness manifested itself in the form of a psychosis which created an impression in Malcolm that the usual and ordinary activities of other persons constituted a threat to his existence; extreme propensity of Malcolm to injure or attempt to injure other persons; and respondents with full knowledge of his attitude and propensities and knowledge that he had in his possession and control a high-powered rifle, voluntarily assumed the care, custody, management and control of Malcolm at their home, knowing that Malcolm had a history of injuring persons. The complaint then alleges that on February 16 and for many years prior thereto, respondents negligently failed to supervise Malcolm's access to said high-powered rifle or to remove it from his possession and control, or to control Malcolm so that he could and would not commit a violent or negligent act upon members of the public, and specifically decedent Michael Edward Alva; negligently failed to have Malcolm committed to a proper custodial facility and by voluntarily assuming the care, custody, control and maintenance of Malcolm respondents prevented appropriate public authorities from committing defendant Malcolm to a proper custodial facility. Appellants conclude with the charge that the conduct of respondents above described constituted negligent supervision and as a proximate result thereof Malcolm obtained access to and intentionally discharged a high-powered rifle, proximately causing Michael Edward Alva's death and traumatic injuries to Julie his fiancee.

The allegations in respect of (1) mental defects, (2) mental illness and (3) psychosis, are supported only by conclusionary allegations that usual and ordinary activities of other persons were considered by Malcolm as a threat to his existence; created a propensity to injure and attempt to injure others. Nothing in the foregoing equates with an allegation that Malcolm because of mental defects or illness or psychosis or any state of mind or any imagined propensity or for any reason or lack of it did in fact at any time injure others or that he ever made an attempt to do so. In fact, the vague, uncertain and conclusionary allegations upon which mental defect, mental illness, or a form of psychosis are based is refuted by lack of direct allegation. The allegation that respondents assumed care of Malcolm and allowed him to possess a rifle is factual and is true but the allegation that respondents assumed care with knowledge of the facts can only mean that they had knowledge of the vague allegations theretofore pleaded even assuming respondents can be charged with conclusions of a pleading. Liberally construed such allegations convey at most that in the *opinion* of the pleader Malcolm was mentally disturbed. Nothing is alleged by way of probative or ultimate fact which impels or suggests as an ultimate fact that Malcolm had been or was dangerous to

himself or others. No attempt is made to allege that Malcolm ever used a rifle as a means of assault or attempted assault or that he used any kind of firearm as a club or even discharged one aimed at or around a person as an offensive weapon on any occasion. Nothing is alleged to suggest that he brandished, displayed, or discharged a firearm in a public place even as a means of calling attention to himself. The allegation that the respondents knew Malcolm had a history of injury to persons is an innocuous recital of knowledge only of the matters alleged, none of which state by way of ultimate or probative fact that Malcolm over the period of his life ever actually assaulted or attempted to actually assault anyone. Nothing is alleged (except the unfortunate shooting) which could furnish a sufficient factual background upon which the respondents or *anyone else,* such as a public official or private citizen, could have had Malcolm committed or even detained for evaluation as a mental suspect dangerous to himself and to others. (Lanterman-Petris-Short Act, Welf. & Inst. Code, § 5000 et seq.)

Predicated upon the foregoing vague, uncertain and conclusionary allegations appellants charge respondents with negligence in (a) permitting Malcolm to keep the rifle; (b) permitting Malcolm to have access to the rifle; and (c) failing to have Malcolm committed.

Section 5150 of the Welfare and Institutions Code provides in pertinent part: "When any person, as a result of mental disorder, is a danger to others, or to himself . . . a peace officer . . . may, upon reasonable cause, take . . . custody and place him in a facility . . . for 72-hour treatment and evaluations."

Section 5201 of the Welfare and Institutions Code provides that: "Any individual may apply to the person or agency designated by the county for a petition . . . there is in the county a person who is, as a result of mental disorder a danger to others . . . ." Provision is made for prescreening by such agency and after prescreening, if the agency believes that the person is a danger to others or to himself, then the agency files a petition along with its prescreening report. (§ 5202.)

Section 5203 provides that if an individual wrongfully seeks commitment of another person he is guilty of a misdemeanor and may be liable in civil damages to the person whom the individual sought to commit.

Section 5204 subdivision (c) requires that the petition contain: "The *facts* upon which the allegations of the petition are based," (italics

added) and section 5205 sets forth the form of such petition which specifically requires the facts upon which the charge is made that a person is dangerous to himself or others.

The allegations of the complaint do not nor does any one of them state any facts upon which respondents or *any* individual (Welf. & Inst. Code, § 5201) could successfully seek a petition from a proper official or agency for an evaluation to determine whether Malcolm was in fact a dangerous person. Respondents had no duty to seek such a petition and if on the allegations made they had desired to relieve themselves of the responsibility and burden of Malcolm's care they could not have succeeded by attempting to confine Malcolm under the provisions of the Lanterman-Petris-Short Act.

The law of tort has been extended primarily for reasons of public policy. ■ Public policy of this state allows one to walk the streets even if mentally ill (see, e.g., Welf. & Inst. Code, §§ 5150 et seq., 5300 et seq.; *In re Gonzales* (1971) 6 Cal.3d 346 [99 Cal.Rptr. 17, 491 P.2d 809]), and, in fact, there is nothing in the law which prevents the mentally ill from possessing firearms.

■ Assuming as we must on demurrer that the respondents had knowledge of the conclusions alleged when they assumed responsibility for the care and shelter of Malcolm and knew as a fact that Malcolm possessed a rifle, none of these factors were of such a nature that respondents knew or should have known that Malcolm was dangerous to himself or others or that they could foresee or should have been able to foresee that Malcolm would, while he was in their charge, with or without a firearm, inflict injuries upon persons who came upon their premises.

*Rowland* v. *Christian* (1968) 69 Cal.2d 108 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496], does suggest that decedent's status as a trespasser could have some relevancy. In *Rowland* the court said at page 119: "The proper test to be applied to the liability of the possessor of land in accordance with section 1714 of the Civil Code is whether in the management of his property he has acted as a reasonable man in view of the probability of injury to others, and, *although the plaintiff's status as a trespasser,* licensee, or invitee *may in the light of the facts giving rise to such status have some bearing on the question of liability,* the status is not determinative." (Italics added.)

In *Rowland* at pages 112-113, the court considering the liability of an occupier of land listed the principal considerations to be used: " . . . the balancing of a number of considerations; the major ones are the

foreseeability of harm to the plaintiff . . . the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalance of insurance for the risk involved."

When Malcolm was invited in their home by respondents they knew he possessed a rifle; he brought it with him and had a constitutional right to own it; he lived in their home for an uncertain number of years before the shooting and nothing in the complaint shows he ever used it improperly or otherwise before or after respondents sheltered him until the day of the fatal shooting. A pleader's conclusions cannot be used as a base to spell foreseeability upon which legal liability can be predicated. Certainly no moral blame can be attached to the conduct of the sisters because they accepted the burden and responsibility of caring for a brother who legally possessed a rifle with no history of its use or abuse. Respondents in fact serviced the community by sheltering a brother who might have become a public charge. We express no opinion as to whether insurance could on the facts before us embrace protection to respondents, nor do we express an opinion on respondents' ability to obtain insurance if they made Malcolm a member of their household if as and when he is released from the prison in which he is now confined.

On the record before us we are satisfied that it would be unjust and morally wrong and against public policy to discourage humane and natural relationships between members of a family who are sensitive to and generous in the treatment of less fortunate members of their family. We would affirm if we had nothing but the complaint to consider.

We now take judicial notice of the superior court file as requested by stipulation of the parties.

In pertinent part the probation report in the superior court file shows: Malcolm had been a combat veteran in World War II with an honorable discharge and had worked on and off as a farmer, for the same bakery in Arkansas for 18 years, as a factory laborer for some years, and in "recent years" as a security officer for Burns Security Agency; Miss Pinkston, one of respondents, indicated that he had not been terribly difficult to control in the past, and that she and her sister have been able to keep him under control mainly by humoring him. Most often they were able to laugh off

matters which developed into problems. Malcolm would go into his room and talk to himself a while and soon forget it or go to sleep. She indicates she visited Malcolm recently, and he does not even recall the shooting. He does not know why he is in jail. Homicide Detective Holmes reconfirmed that Malcolm was entirely rational and in good grasp of current and remote details when he was interviewed; Malcolm reiterated to him the statement that he shot the victim because the victim had been harassing him and if Malcolm has in fact lost all recall of the incident, it is a development that took place since the commission of the offense. Testimony of another of the arresting officers was to the effect that immediately prior to the shooting Malcolm was sitting in the living room cleaning his rifle. Concurrently with the entry into the driveway of decedent's auto, Malcolm jumped up and one of the sisters tried to restrain him but he nevertheless opened the front door and fired one shot that killed decedent.

Doctors who testified to Malcolm's sanity prior to sentencing found him sane.

At time of sentencing two medical reports were introduced which were ordered attached to the probation report by the court. They showed in pertinent part: Malcolm was hospitalized in a Veterans' Administration Hospital in Little Rock, Arkansas, briefly in 1961 because he "gave out from working too hard." The clinical diagnosis showed: "Schizophrenic reaction, paranoid type; (a) chronic, moderate, active; (b) external precipitating stress: undetermined; (c) premorbid personality and predisposition: marked schizoid existence all of his life and previous hospitalization for the same disability; and (d) degree of impairment: moderate."

Malcolm was again hospitalized in a Veteran's Hospital in Long Beach in 1968 also for a brief period and in pertinent part the report shows: "The patient appears to be functioning below normal intelligence at present. He has apparently been a loner, and he is believed to be a heavy drinker and does not eat properly." These notes were made on September 12, 1968, and the patient was seen again on October 11, 1968, by the Psychology Service and it was concluded that the patient again has a mild chronic brain syndrome; and recommendations were administration of Mellaril 25 mg. three times a day, and to discharge the patient at the earliest date. No chronic hospitalization for his chronic brain syndrome was recommended. The exact words were "at this time the patient does not appear to be committable, nor does he appear to need psychiatric hospitalization."

One of the doctors, Harold C. Deering, wrote as of April 8, 1973, "He is not at present a menace to the health and safety of others."

The probation report also showed one prior arrest in 1968 in West Covina for drunk driving. Malcolm was fined $295.

The only incident in the probation report or the entire record showing actual physical aggression by Malcolm appears in a report by the Veteran's Hospital in Arkansas to the effect that in 1961 when Malcolm was 50, he was arrested in Arkansas for assault "with intent to kill his brother" but nothing suggests a firearm was used.

The court in the criminal proceeding denied probation and sentenced Malcolm to state prison for the term prescribed by law and recommended psychiatric hospitalization care and treatment.

It clearly appears from the augmented file why the allegations of the complaint are conclusionary, vague, uncertain, evasive and nonfactual.

In the absence of ultimate facts that Malcolm was dangerous to himself and others at least sufficient to warrant a reasonable assumption that a petition for evaluation or committment under the Lanterman-Petris-Short Act would be granted, we are not ready to equate respondents' assumption of a moral obligation to a guarantee and indemnification agreement in respect of Malcolm's conduct on or off respondents' premises as if he were a dog and to hold that respondents are their brother's keeper but at their risk.

We are satisfied there was no abuse of discretion in the order sustaining respondents' final demurrer without leave to amend.

The judgment is affirmed. Costs to respondents.

Compton, J., and Beach, J., concurred.