578 P.2d 1069 (1978)
Patty Lou SEGO, Plaintiff-Appellant, and Cross-Appellee,
v.
Louise MAINS, Defendant-Cross-Appellant,
v.
Thomas MAINS, Defendant-Appellee.
No. 76-912.
Colorado Court of Appeals, Division 2.
April 27, 1978.
*1070 Tallmadge, Tallmadge, Wallace & Hahn, C. Thomas Bastien, Denver, for plaintiff-appellant, and cross-appellee.
Hindry & Meyer, P. C., Richard S. Hays, David R. DeMuro, Denver, for defendant-cross-appellant, and defendant-appellee.
SMITH, Judge.
Plaintiff, Patty Lou Sego, brought this action against Louise Mains and Thomas Mains, her son and custodian, to recover *1071 damages for injuries Mrs. Sego suffered when Louise Mains struck her on the head with a glass goblet.
Plaintiff sued Louise for battery, and joined Thomas on the theory that he had violated his duty as custodian for Louise and was therefore responsible for any injuries inflicted by her. The jury returned a verdict against Louise Mains in the amount of $8,500, but determined that Thomas Mains was not liable.
Plaintiff appeals the finding in favor of Thomas, and Louise Mains cross-appeals the judgment entered against her. We affirm.

Liability of Thomas
Plaintiff's case against Thomas was based on the theory of negligence per se. The essential facts asserted in support of this claim are as follows. Acting on a Medical Commission Report, the Denver Probate Court, on December 14, 1971, adjudicated Louise Mains mentally ill and ordered that she be committed to the custody of her son, Thomas, whose address at that time was in Alexandria, Virginia.
Plaintiff was permitted to introduce the order of adjudication and commitment into evidence, but was refused permission to introduce either the Medical Commission Report or the commitment statute. The court further refused plaintiff's tendered instruction on negligence per se. Each of these rulings is asserted by plaintiff as error.
The commitment statute, 1965 Perm. Supp., C.R.S.1963, 71-1-11(2), states in pertinent part:
"[T]he court may, in its discretion, commit the [mentally ill] respondent to some other hospital or suitable place, not under the supervision of the department of institutions, or the court may designate some proper person to take custody of said respondent and assume his custody, care, and maintenance."
To support the claim that this statute should have been considered by the jury as a basis for negligence per se, the plaintiff asserts that the statute was written for the safety of the public as well as for the mental incompetent. See Kendall v. People, 126 Colo. 573, 252 P.2d 91 (1952). That may well be. But, it is an essential element of negligence per se that the statute prescribe or proscribe specific conduct on the part of the alleged tort-feasor, see Dunbar v. Olivieri, 97 Colo. 381, 50 P.2d 64 (1935) that is, detail whether "particular acts shall or shall not be done" by the party charged with observing the statute. W. Prosser, Torts 36 (4th ed. 1971).
Here, Thomas Mains as a custodian, was an object of the power created by the statute. As far as he was concerned, the commitment statute neither prohibited nor required any particular conduct on his part. It merely directed that he could be designated as a person having the general duty of being a custodian. As a party who could not have violated the statute, Mr. Mains can hardly be assessed with civil liability based upon it. See Calkins v. Albi, 163 Colo. 370, 431 P.2d 17 (1967). Inasmuch as the court order placing Thomas' mother under his custody was received into evidence, the jury was aware that he had been given a responsibility. But as far as negligence per se resulting from violation of a statute is concerned, the court properly refused to admit the statute into evidence, and to instruct the jury on this issue. See Houser v. Eckhardt, 168 Colo. 226, 450 P.2d 664 (1969).
Plaintiff claims that even if the statute was not admissible to establish a basis for negligence per se, she had the right under XX-XX-XXX, C.R.S.1973, to apprise the jury of the commitment statute, presumably as an indication of a standard of care. We disagree.
Section 13-25-101, C.R.S.1973, provides that any statute "may be read as evidence in all courts of this state." However, the threshold determination of admissibility of any evidence, including statutes, is one of relevance. The test of relevance, which is a determination left within the sound discretion of the trial judge, is whether the evidence would tend to make the existence of a fact more or less probable. See Bush v. Jackson, Colo., 552 P.2d 509 (1976). Here, there was no abuse of that discretion. The commitment statute was not relevant to the issue of Thomas Mains' negligence or non-negligence.
*1072 The plaintiff next objects to the court's refusal to admit into evidence the medical commission report which had concluded that Louise Mains was mentally ill. Plaintiff asserts the report was admissible on the basis that it tended to show that Thomas Mains had notice of Louise Mains' propensities.
We, however, agree with the court's comment that the report's findings had the potential for confusion. The report consists of essentially one word answers to complex and compound questions, and was virtually meaningless as an aid in determining which traits of Louise Mains led the commission to its conclusion that she was mentally ill.
Hence, the trial court acted in its prerogative in refusing evidence which would have confused the jurors more than it would have aided them. See Veer v. Hagemann, 334 Ill. 23, 165 N.E. 175 (1929); Federal Rules of Evidence 403; McCormick on Evidence 152 (E. Cleary 2d ed.).
The plaintiff lastly asserts that the jury instruction which dealt with proximate cause and foreseeability imposed too onerous a burden of proof upon her. To Colo. J.I. 9:28, which states that a party will only be liable for the reasonably foreseeable consequences of his negligence, the following addendum, offered by the defendant, was accepted by the court:
"You are further instructed, however, in order for you to find that the plaintiff's injuries, if any, were foreseeable, you must find that plaintiff has proved the following:
1. That prior to November 5, 1973 Louise Mains had a propensity to commit acts similar to the one complained of by plaintiffs;
2. The defendant, Thomas P. Mains, Jr., was aware of this propensity on the part of Louise Mains; and
3. That the defendant, Thomas P. Mains, failed to restrain Louise Mains from committing this particular type of act for which she had a propensity."
Plaintiff characterizes this as a "dog bite" instruction, and says that requiring knowledge of a specific propensity to commit violent acts goes beyond the standard quantum of proof in negligence law.
The defendant, on the other hand, believes that without an elaborating instruction, a jury in a case like this might be disproportionately influenced by the fact that the defendant was a custodian for his mentally ill mother. He asserts that there is a risk, under the broad language of the standard jury instruction, that the jury might apply too stringent a standard to custodians by assuming that a custodian is, by the nature of his responsibility, liable for every vagary of his ward which results in injury. A corollary of this is the possibility that a jury might assume that someone who has been adjudged to be mentally ill is dangerous per se.
The case law from most states supports the defendant's arguments. The majority approach is that, in the absence of proof that a mentally ill person is dangerous to others, the custodian will not be held as a guarantor of the public safety. See Alva v. Cook, 49 Cal.App.3d 899, 123 Cal.Rptr. 166 (1975); Fisher v. Mutimer, 293 Ill.App. 201, 12 N.E.2d 315 (1937) (father could not be held liable for unexpected violence on the part of his adult son who had been released to his custody from a mental hospital); Whitesides v. Wheeler, 158 Ky. 121, 164 S.W. 335 (1914) (mother not considered to be on notice of violent tendencies of her mentally ill son when the only previous violence occurred ten years earlier); see Restatement (Second) of Torts 319 (custodian has duty to prevent harm to third parties, if he "knows or should know [that his ward is] likely to cause bodily harm to others"). See also Smart v. United States, 111 F.Supp. 907 (W.D.Okl.1953), aff'd, 207 F.2d 841 (10th Cir. 1953). To hold otherwise would be to treat the custodian unfairly. For, without tangible proof of violent tendencies, even psychiatrists are "virtually incapable of distinguishing between violent and non-violent patients." Comment, Imposing a Duty to Warn on PsychotherapistsA Judicial Threat to the Psychiatric Profession, 48 U.Colo.L.Rev. 283, 286 (1977).
We agree with the majority approach and hold that a custodian should not *1073 be held liable for the torts of his mentally incompetent ward unless he was on notice as to the ward's violent propensities. The instruction given to the jury, being supported by ample evidence of the custodian/ward relationship, was therefore proper. See Davis v. Cline, 177 Colo. 204, 493 P.2d 362 (1972).

Special Damages
The sole issue raised on cross-appeal by defendant Louise Mains is that the verdict erroneously included an award of special damages for lost wages. Her assertion stems from statements made by the plaintiff's counsel in his closing argument concerning Mrs. Sego's lost wages. Louise Mains claims she is entitled to reversal, on the ground that wages represent special damages and the jury had been instructed on general damages only. Specifically, plaintiff's counsel mentioned that the plaintiff had lost work following her injury and that she had previously been earning $2.25 per hour. At that point, an objection was made and the trial court stated that "insofar as you [plaintiff's counsel] were planning to utilize [lost earnings], your comments should be limited, but as an item to consider in awarding damages you are certainly allowed to commenton general damages, I should say." Plaintiff's counsel then told the jury that he could not specify the lost earnings. "We can only say," he added, "that she was unable to work . . ."
Since the plaintiff had been employed by the defendant at the time of the battery, an inability to continue work was a foreseeable result of the tort. As such, it was a proper subject of comment on closing arguments relative to general damages. See Rogers v. Funkhouser, 121 Colo. 13, 212 P.2d 497 (1949).
Insofar as the brief mention of plaintiff's specific hourly earning capacity is concerned, the error was harmless. Not only did the trial court quickly contain the situation, but also the jury had properly been instructed to consider, in reaching its verdict, only evidence which had been properly introduced at trial.
Based on the record before us, we must presume that the jury properly disregarded the errant statements and followed all of the instructions provided by the court. Furthermore, on examining the record, we are satisfied that there was ample evidence to support the damages awarded by the jury.
Judgments affirmed.
RULAND and STERNBERG, JJ., concur.