LEVERETT, ADMX., *v.*
THE STATE OF OHIO ET AL., APPELLEES.

[Cite as Leverett v. State (1978), 61 Ohio App. 2d 35.]

(No. 78AP-107—Decided October 26, 1978.)

*Mr. Elliot R. Levine,* for appellant.
*Mr. William J. Brown,* attorney general, *Mr. Melvin D. Weinstein,* for appellees, the State of Ohio et al.
*Mr. Richard T. Reminger,* for appellees Drs. Markiewicz and Silas.

STRAUSBAUGH, J. This is an appeal by the plaintiff from a dismissal by the Court of Claims pursuant to Civ. R. 12 (B) (6).

The complaint, filed on September 16, 1977, alleged that the release of Alfornia Lewis from the Western Reserve Psychiatric Habilitation Center, aka Hawthornden State Hospital, and the subsequent refusal to readmit Lewis, was negligent and careless and, or, willful and wanton. The plaintiff argued that the defendants knew or should have known

that Lewis was a dangerous mental patient and that they owed a duty to the public to use reasonable care and excercise good faith in releasing Lewis.

Lewis was released on June 28, 1975. On September 16, 1975, Lewis shot and killed Mr. Remmie O. Leverett, the husband of Gladys M. Leverett, and has since been adjudicated mentally insane and committed to Lima State Hospital. The plaintiff claims that the negligent release of Lewis was the proximate cause of the death of Mr. Remmie O. Leverett, and she seeks damages from the state through the Court of Claims.

The defendants moved for a dismissal on November 21, 1977, for a failure to state a claim upon which relief could be granted. The plaintiff did not file a brief in opposition to the motion to dismiss within the 14 days provided by the rules of the Court of Claims. On December 19, 1977, the parties filed a joint motion to stay proceedings in the case, the filing of which appears on our copy of the original Court of Claims docket, but the original motion was not included in the record as originally transmitted from the Court of Claims due to a clerical error in filing the motion. From the record, it is impossible to determine if this motion was ever presented to the court. The motion states that another action arising out of the same circumstances and between the same parties was pending in the United States Court of Appeals for the Sixth Circuit. The issue before that court was whether the suit met the qualifying factors for a cause of action under Section 1983, Title 42, U. S. Code. The joint motion also contained the following:

"***Both Plaintiffs and Defendants also move that the submission of all further briefs and motions be stayed (including Plaintiff's Brief in Opposition to Defendants' Motion to Dismiss) until twenty (20) days after this court has reactivated this cause of action (or ruled that the joint motion for stay of the proceedings should not be granted.)"

Without making reference to the joint motion, the Court of Claims dismissed the action on January 31, 1978. On February 22, 1978, the plaintiff filed the following:

"Motion to vacate the order and to grant the joint motion of plaintiffs and defendants to stay proceedings because of pending litigation in Federal Court. In the alternative motion

to stay the order and to permit plaintiffs time to file a brief in opposition to defendants' motion to dismiss the complaint for failure to state a claim for which relief may be granted."

Plaintiff subsequently filed a notice of appeal with the Court of Claims on February 27, 1978. On February 28, 1978, the Court of Claims filed an order stating:

"A notice of appeal being filed, the motion for vacation of the dismissal order or to stay the order entered is not well taken and is denied and dismissed or alternatively considered as moot."

The plaintiff's first assignment of error is:

"It was error for the Court of Claims of Ohio not to grant the joint motion to stay the cause of action because another action is pending."

The plaintiff cites 14 Ohio Jurisprudence 2d 563, Courts, Section 149, for the well-settled principle that when two courts have concurrent or co-extensive jurisdiction, the court which first obtains jurisdiction has the right to adjudicate the action to the exclusion of all other courts.

The threshold issue, however, is whether the federal courts have concurrent or co-extensive jurisdiction to decide claims against the state of Ohio. The plaintiff contends that the state's waiver of immunity under R. C. 2743.02 applies to the facts of this case. Jurisdiction over such actions, however, has been vested exclusively in the Court of Claims under R. C. 2743.03, which states:

"***The court of claims is a court of record and has exclusive, original jurisdiction of all civil actions against the state permitted by the waiver of immunity contained in section 2743.02 of the Revised Code***."

In *Mierke* v. *Superintendent of Banks*, unreported, Tenth Appellate District, No. 78AP-304, decided September 7, 1978, we interpreted the state's waiver of immunity in R. C. 2743.02 as follows:

"A federal district court has no jurisdiction in an action against the state, unless the state has consented to be sued. Although the state has consented to be sued by R. C. 2743.02, such Section expressly provides that the state 'consents to be sued***in the court of claims created in this chapter***.' We find nothing in R. C. 2743.03 (E), *supra,* which in any way consents to the filing of a suit in federal court.***"

Therefore, the federal courts are *not* courts of concurrent or co-extensive jurisdiction as to this action, and the Court of Claims' refusal to grant a stay was proper. Plaintiff's first assigment of error is overruled.

Plaintiff's second assignment of error is:

"The waiver of immunity from liability by the state of Ohio makes the state of Ohio and its agencies liable under the facts of this case. In that private hospitals are liable for releasing and/or non-readmitting a patient who was known or should have been known to be dangerous and homicidal the state of Ohio is liable under ORC §2743.02 for releasing such a patient under its care."

We interpreted the state's waiver of sovereign immunity in R. C. 2743.02 (A) in the case of *Smith* v. *Wait* (1975), 46 Ohio App. 2d 281. In determining whether the plaintiff in that case had stated a claim upon which relief could be granted against the state, we said, at page 283:

"The state's waiver of its sovereign immunity from liability has not opened up the public coffers to all who may seek recompense but, rather, permits the liability of the state to be determined in accordance with the rules of law applicable to suits between private parties, no new claim for relief or right of action being created by the waiver of immunity. R. C. 2743.02 (A) merely permits actions against the state to be brought which were previously barred by the doctrine of sovereign immunity, but such actions must be predicated upon previously recognized claims for relief, for which the state would have been liable except for sovereign immunity.***"

Expanding upon this interpretation in *Hahn* v. *Brown* (1976), 51 Ohio App. 2d 177, we said, at page 179:

"***Certainly the action brought herein is not one which could have been brought between private parties, inasmuch as private parties have no duty, as does the state, to incarcerate criminals and juvenile offenders. It must be remembered that the Court of Claims Act did not create new causes of action where none existed in the past.***"

Applying these principles to the instant case, we must first determine if there is a duty on the part of private hospitals to use reasonable care in releasing and refusing to readmit potentially dangerous mental patients, and second

whether this same duty attaches to the state. For a survey of how other jurisdictions have dealt with this issue, see Annotation, 38 A.L.R. 3d 699. As authority for its decision that no actionable claim was alleged, the Court of Claims cited *Adamov* v. *State* (1975), 46 Ohio Misc. 1; *Mawhirter* v. *Dept. of Rehabilitation and Correction,* unreported, Court of Claims, No. 75-0122, decided September 24, 1975; *Harris* v. *State* (1976), 48 Ohio Misc. 27; *Smith, supra, Hahn, supra,* and *Walker* v. *State,* unreported, Tenth Appellate District, No. 76AP-960, decided November 1, 1977.

With regard to the specific duty in question, *Adamov, Mawhirter, Hahn* and *Walker,* are distinguishable in that all deal with the state's duty to incarcerate, where no corresponding activity is undertaken in the private sector, as discussed in *Hahn.* There are, however, private hospitals for mental patients. Therefore, these four cases are not controlling. The *Smith* case dealt with the state's regulation of securities, and can be cited for a general interpretation of the state's waiver of immunity, but not as it relates specifically to the instant case.

Only the *Harris* case speaks directly to the issue before us now. The syllabus of that case states:

"1. The Department of Mental Health and Mental Retardation is not, as a matter of law, responsible for the actions of a former inmate and current out-patient of its facilities, where such actions took place approximately two years after the inmate's discharge and where the discharge was in accordance with the statutes.

"2. The discretionary acts of governmental officials do not, in general terms, create liability for the state.

"3. The state, including its officers and agencies, must be given room to govern; the act of governing is not itself a tort."

From the outset, it must be noted that the instant case involves the alleged actions of a mental patient only three months after having been released, as opposed to two years in *Harris.* This is of course a distinction between the two cases. As to the second part of the *Harris* syllabus, we are in complete agreement with the court that *generally* the discretionary acts of governmental officials do not create liability for the state. However, the waiver of sovereign immunity

enacted by the General Assembly permits state liability, "in accordance with the same rules of law applicable to suits between private parties***." R. C. 2743.02 (A). Therefore, if a private hospital can be liable to injured third persons for the negligent release or failure to readmit a dangerous mental patient, so could the state under the provisions of R. C. 2743.02 (A).

Neither party has cited us an Ohio case and we have found no Ohio case involving a private hospital in this particular issue. This does not, however, preclude our making a decision as to the state's liability, since we are to use the rules of law as we construe that they would apply to private parties.

As to the release of a patient, the two key issues are, (1) whether a private hospital has a duty toward third persons not to unreasonably release or refuse to admit or readmit dangerous mental patients, and, if such a duty exists. (2) whether a three month gap between the release of a patient and the injury to a third party is so long as to render the hospital free from liability as a matter of law. We conclude that a duty does exist as between a private mental hospital and third parties based on the totality of the circumstances surrounding their relationship. Applying such a rule to the state in accordance with the intent of the General Assembly as expressed in R. C. 5122.34, we would hold that there is a corresponding duty upon a state mental hospital.

Both private and public hospitals are faced with the extremely difficult task of balancing the interests of a patient who would benefit from permanent or periodic release, the interest of society in treating mental illness and returning the patient to a normal, productive life, and the interests of society in keeping a dangerous, mentally ill person off the streets. The uncertainties inherent in analyzing and treating the human mind, let alone the decision of when a person is "cured" and no longer a danger, renders the decisions of skilled doctors highly discretionary and subject to rebuke only for the most flagrant, capricious, and arbitrary abuse. Nevertheless, the public has a need, and a right, to rely on the professional decisions made in these hospitals as having been made reasonably and in good faith; hospitals have such a duty

in making these decisions. Therefore, a hospital may be held liable for the negligent release of a mental patient only when the hospital, in exercising medical judgment, knew or should have known that the patient, upon his release, would be very likely to cause harm to himself or others. Such likelihood must be more than a mere possibility and not based on hindsight.

Plaintiff has advanced substantially the same arguments for the recognition of a duty as to the admittance or readmittance of a mental patient. The circumstances surrounding a readmission of a patient are substantially different from those surrounding releases. In most instances, the doctor or hospital has only the assessment of lay people as to the condition of the "patient," as opposed to the opinions of medical experts after admitting, observing, and examining the patient. A duty as to readmission similar to the duty of care in discharging would in effect require the admission of *all* persons suspected by lay people to be dangerous. The dissimilarities of circumstances and pragmatic effect convinces us that mental hospitals and doctors are not generally under a legal duty to third parties as to decisions not to admit or readmit a patient.

The final issue to be considered with regard to plaintiff's second assignment of error is whether the release of Lewis could not, as a matter of law, be the proximate cause of Mr. Leverett's death because the release was three months prior to the shooting of Mr. Leverett by Lewis. In *Harris,* the Court of Claims determined that a two year gap between release and an injury to a third party relieves the state of liability as a matter of law. A three month gap, may, under a given set of circumstances, present a different status as to potential liability. Such a determination should be left to the trier of fact.

Plaintiff's second assignment of error is sustained, with regard to the release of Lewis, but is overruled with regard to the the admission or readmission of persons suspected of being mentally ill.

Plaintiff's third assignment of error states:

"The Court of Claims erred in holding without an evidentiary hearing that appellant is not entitled to relief against the individual appellees."

The legislature has spoken directly to the issue raised by the plaintiff, by modifying R. C. 5122.34. Prior to the modification, R. C. 5122.34 read:

"All persons acting in good faith, either upon actual knowledge or information thought by them to be reliable, who procedurally or physically assisted in the *hospitalization* of an individual pursuant to the provisions of this chapter of the Revised Code, do not come within any criminal provisions, and are free from any liability to the individual hospitalized or to any other person." (Emphasis added.)

The section as modified and effective August 26, 1976, states:

"Persons acting reasonably and in good faith, either upon actual knowledge or information thought by them to be reliable, who procedurally or physically assisted in the *hospitalization or discharge* of a person pursuant to this chapter, do not come within any criminal provisions, and are free from any liability to the person hospitalized or to any other person." (Emphasis added.)

The addition of the words "or discharge" in the liability section clearly indicates that the General Assembly intended for doctors practicing in mental hospitals to be free from liability for the discharge of patients if such discharge is reasonable and in good faith. Conversely, such an expressed intention necessarily implies that doctors could be liable at some time, presumably when they act unreasonably or in bad faith. Therefore, by virtue of both the relationship and the circumstances of the parties, and the manifest intent of the General Assembly, there is a duty on the part of doctors as well as hospitals to act reasonably and in good faith in the release of dangerous mental patients, for the breach of which a third party could maintain a cause of action, if his injury is proximately caused by the acts or omissions of the doctors or hospital. This conclusion is supported by the Court of Claims' decision in *Hale* v. *Portsmouth Receiving Hospital* (1975), 44 Ohio Misc. 90. The requirements as to expert testimony on the standard of conduct and its application to the facts at issue would correspond with the established requirements in the area of medical malpractice.[2]

---

[2] Since it was not raised, we express no opinion as to the effect, if any upon this case of the amendment to R. C. 2743.02 (A), effective February 7, 1978.

Plaintiff's third assignment of error is sustained and the cause is reversed for further proceedings in accordance with law and this decision.

*Judgment reversed
and cause remanded.*

HOLMES, P. J., and WHITESIDE, J., concur.

HOLMES, P. J., concurring. I concur in this decision because I feel that the philosophy comports with the general thrust of what I stated in the case of *Jenkins* v. *Division of Wildlife,* unreported, Tenth Appellate District, No. 75AP-524, rendered August 12, 1976.

In such decision, at page 5, I stated:

"Fundamentally, the tortious conduct complained of against the state, in order to fall within the purview of the statute, must be the type of act or function that could be done by a private party rather than an act or function uniquely governmental by nature, exercising an officer's discretionary administrative determination. Governmental functions that cannot be performed by a private party are not within the ambit of the waiver of immunity. There are, of course, a considerable number of functions which are intrinsically capable of performance only by the government and not by private parties, and within these areas of activity it is our view that the government has not waived its immunity from liability resulting from damages caused by purely governmental functions."

Here, the type of act or function could be done by a private party, rather than a discretionary act or function uniquely governmental by nature; and, in similar manner, as in the case of a private mental hospital there is a duty to act reasonably and in good faith in the release of known dangerous mental patients, for the breach of which third parties may maintain an action against the state.