The ESTATE of Brenda Joyce MATHES, by Kenneth O. Mathes, Administrator and Kenneth O. Mathes, Plaintiff-Appellant,

v.

Kenneth L. IRELAND, Juanita Ireland, Shiela Pierce, Donald Pierce, Oaklawn Psychiatric Center, and Northeastern Indiana Psychiatric Center, Inc., Defendants-Appellees.

No. 3-179A27.

Court of Appeals of Indiana, Third District.

April 27, 1981.
Rehearing Denied June 24, 1981.

Howard S. Grimm, Grimm & Grimm, David A. Kruse, Kruse & Kruse, Auburn, for plaintiff-appellant.

Philip Butler, James P. McCanna, Butler & McCanna, Auburn, Carl J. Suedhoff, Jr., Thomas L. Wooding, Hunt, Suedhoff, Borror, Eilbacher & Lee, Fort Wayne, Gregory A. Hartzler, Yoder, Ainley, Ulmer & Buckingham, Goshen, for defendants-appellees.

GARRARD, Judge.

Kenneth O. Mathes, individually, and as the administrator of the estate of Brenda Joyce Mathes, brought this action for wrongful death. The complaint alleges essentially that on October 13, 1973, one Kenneth R. Pierce, aged 20, abducted Brenda Mathes at knifepoint from a laundromat. He forced her into his car and drove to the St. Joe River. There he forced her from the car and drowned her. She was survived by her husband and one minor child.

After several amendments the complaint asserted claims against Pierce, his mother and father, his grandparents and two psychiatric care centers, Oaklawn Psychiatric Center and Northeastern Indiana Psychiatric Center, Inc. All the defendants except Kenneth Pierce filed motions to dismiss

pursuant to Indiana Rules of Procedure, Trial Rule 12(B)(6). Mathes now appeals from the order granting those motions.[1]

Because of the mandate of *State v. Rankin* (1973), 260 Ind. 228, 294 N.E.2d 604 concerning the application of TR 12(B)(6), we conclude that the claims, except as to the father, Donald Pierce, were prematurely dismissed.[2] In so holding we stress at the outset that we are not expressing any belief that appellant is entitled to recover against these defendants. He is grasping at the finest of threads to produce an acceptable legal ground for liability, and it is only under the most unusual set of circumstances that any of his arguments may prove successful. Nevertheless, were he able to demonstrate the necessary factual requisites, liability for one or more of the defendants could result. Therefore, as remote as that possibility may be, under *Rankin*, the door may not yet be closed against him.

### I. The parents and grandparents

■ Mathes' argument as to the parents and grandparents can be simply stated. He asserts Pierce resided with his mother and grandparents. He believes they knew that Pierce was insanely violent and dangerous.[3] Mathes contends that as a result they had a responsibility to supervise Pierce and control his activities. He contends the breach of that duty resulted in Brenda Mathes' abduction and death.

As § 319, Restatement (Second) of Torts makes clear, the premise upon which the sought-for duty rests is *not* any familial relationship of the parties. It depends instead upon the actual assumption of care and control of one known to be dangerous:

"One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm."

*See also Sego v. Mains* (1978), 41 Colo.App. 1, 578 P.2d 1069; *Fisher v. Mutimer* (1937), 293 Ill.App. 201, 12 N.E.2d 315; *Whitesides v. Wheeler* (1914), 158 Ky. 121, 164 S.W. 335.

Moreover, there is a countervailing policy consideration of which we must take note. As the court stated aptly in *Alva v. Cook* (1975), 49 Cal.App.3d 899, 123 Cal.Rptr. 166:

"Certainly no moral blame can be attached to the conduct of the sisters because they accepted the burden and responsibility of caring for a brother who legally possessed a rifle with no history of its use or abuse. Respondents in fact serviced the community by sheltering a brother who might have become a public charge .... On the record before us we are satisfied that it would be unjust and morally wrong and against public policy to discourage humane and natural relationships between members of a family who are sensitive to and generous in the treatment of less fortunate members of their family."

For the *duty* to exist there must therefore not only be an actual taking charge of the third person, there must also be a knowledge of the likelihood that he will cause bodily harm. Germane to that determination is the reliance such a custodian is reasonably entitled to place on expert medical, psychological or psychiatric advice.

Since the complaint against Pierce's mother and grandparents was broad enough

---

1. The claim against Kenneth Pierce is pending and not involved in this appeal.

2. "A complaint is not subject to dismissal unless it *appears to a certainty* that the plaintiff would not be entitled to relief under *any set of facts* .... When no evidence has been heard or no affidavits have been submitted, a 12(B)(6) motion should be granted only where it is clear from the face of the complaint that under no circumstances could relief be granted." (Emphasis original) 260 Ind. 228, 294 N.E.2d 606.

3. The claim sets forth some specific factual allegations. We omit them to emphasize that at this stage of the proceedings Mathes was not limited as to the facts he might prove. That is the major import of *Rankin*. *See Soltes v. School City of East Chicago* (1976), 168 Ind. App. 637, 344 N.E.2d 865, 868.

to assert a claim on this theory of liability, we conclude it was prematurely dismissed.

■ We find, however, that the suit was properly dismissed as to Pierce's father since it is clear that no custodial relationship existed between him and Kenneth.[4] Donald Pierce's only asserted relationship to the events in question was that of father of twenty year old Kenneth. Liability upon his part cannot be predicated upon that relationship alone and dismissal was therefore proper. *See, e. g., Broadstreet v. Hall* (1907), 168 Ind. 192, 80 N.E. 145, 147.

### II. The Psychiatric Centers

The complaint against Oaklawn alleged that about August 22, 1973, Pierce was submitted to its care for diagnosis and treatment; that the staff knew or should have known that it was extremely dangerous to release Pierce; and that their lack of care was a contributing proximate cause of Brenda Mathes' death. Subsequently, Northeastern was added as a defendant under allegations that it had a contractual relationship with Oaklawn and was involved in evaluating, counseling and treating Pierce prior to October 13, 1973. It is further alleged that Northeastern's personnel knew or should have known that it would be extremely dangerous to the community to release Pierce without extended treatment.

Again we note that our perspective in the light of *Rankin* at this stage of the proceedings focuses upon whether Mathes has stated any viable theory for recovery. In the absence of any showing of the facts and circumstances that existed, we feel it would be unwise to venture into any detailed analysis concerning liability questions in this area. However, our review of two primary issues urged by the centers leads us to conclude that Mathes is not yet foreclosed from attempting to establish liability.

■ We agree with the centers that it is well established that, when between an alleged act of negligence and the occurrence of an injury, there intervenes the wilful, malicious and criminal act of a third party which causes the injury and which could not reasonably have been foreseen by the allegedly negligent party, the causal chain between the negligence and the injury is broken. Restatement (Second) of Torts § 448; Annot., 78 A.L.R. 471. However, if the centers, or either of them, had actually taken charge of Pierce within the meaning of § 319 Restatement (Second) of Torts as alleged in the complaint, and additionally had actual knowledge that Pierce was extremely dangerous, again as alleged in the complaint then we think they were bound to exercise reasonable care[5] under the circumstances. If they did not, sufficient causation could exist. *See, e. g., Leverett, Admx. v. State* (1978), 61 Ohio App.2d 35, 399 N.E.2d 106; *Tarasoff v. Regents of U. of Cal.* (1976), 17 Cal.3d 425, 131 Cal. Rptr. 14, 551 P.2d 334.

Secondly, we are urged that the centers cannot be found liable upon the basis of negligent acts which may have been committed by psychiatrists or psychologists employed by them. In support the centers refer us to *Iterman v. Baker* (1938), 214 Ind. 308, 15 N.E.2d 365 in which our Supreme Court held that a hospital was not liable for the acts of physicians and surgeons who bore the relationship of independent contractor to the hospital.

In the present appeal it is sufficient answer to note that the complaint broadly alleged negligence on the part of the centers' "staff" or "duly authorized personnel." If under these allegations the plaintiff can

---

**4.** It appears that the mother and father were divorced and the father lived in a different community. Undisputed affidavits establish the father's lack of actual control and permitted the court to rule as on summary judgment. TR 12(B).

**5.** We observe, without deciding, that those jurisdictions which permit an action on this basis are careful to define the standard of reasonable care as that due from similar professionals in a field where there remains considerable uncertainty of diagnosis and tentativeness of professional judgment. *Hicks v. U. S.* (D.C.Cir.1975), 511 F.2d 407, 415; *Leverett, supra* 61 Ohio App.2d 35, 399 N.E.2d at 110; *Tarasoff, supra,* 17 Cal.3d 425, 131 Cal.Rptr. 14, 551 P.2d at 345.

establish negligence on the part of regular employees in the performance of their regular duties under the supervision and control of the center, liability may be established. *Fowler v. Norways Sanitorium* (1942), 112 Ind.App. 347, 42 N.E.2d 415.

In addition, however, we are unable to accept the centers' assertion that *Iterman* precludes their liability in any event for the actions of staff psychiatrists and psychologists for the reason that the centers themselves cannot be licensed to perform these services.

It is quite true that in *Iterman* the court stated as one ground for its holding that a hospital corporation by statute was prohibited from practicing medicine. But it did so on the facts before it because the complaint was stated upon the theory that the hospital corporation *was* engaged in the practice of medicine and that it had contracted to diagnose and treat Baker's injury. 214 Ind. 308, 15 N.E.2d at 369.

To that claim it was germane and reasonable to point out that a corporation could not secure a license to practice medicine; that indeed public policy opposed it. It is, however, a non sequitur to conclude that because a hospital cannot practice medicine or psychiatry, it cannot be liable for the actions of its employed agents and servants who may be so licensed. Similar logic would dictate that a city cannot be liable for the negligence of its employees in driving automobiles since the city cannot hold a driver's license or that a corporation cannot be liable for the misactions of its house counsel since it could hold a license to practice law.

■ We have no quarrel with the *Iterman* recognition that many physicians may hold staff privileges at one or more hospitals and that merely by treating a patient at a given hospital they do not thereby render the hospital liable on the basis of respondeat superior for some act of malpractice they may commit. Under such circumstances the proper question is whether they are an independent contractor or an employee. However, we find no logical basis for denying liability under proper circumstances on the ground that the professional must exercise a professional judgment that the principal may not properly control. The general rule of liability that presupposes *authorization* of the acts of the agent in order to bind the principal applies to a principal's contractual or *non-tort* liability. See, e. g., 3 Am.Jur.2d *Agency* § 261, p. 627. The *tort* liability of the principal expressed in the doctrine of respondeat superior is based not upon the agency relationship (authorization or ratification) but upon the employer-employee relationship. Thus, the touchstone for the principal's liability for the tortious acts of his agent is merely whether they are done within the course and scope of the employment. *Pittsburgh C. C. & St. L. Ry. Co. v. Sullivan* (1894), 141 Ind. 83, 40 N.E. 138; *Miller v. Long* (1956), 126 Ind.App. 482, 131 N.E.2d 348, *reh. denied* 126 Ind.App. 482, 132 N.E.2d 272. *See also* 3 Am.Jur.2d *Agency* § 267, p. 631.

In the present appeal we have as yet no substance from which to determine whether the employees of one or both of the centers committed acts of negligence which may have proximately contributed to the death of Brenda Mathes.

We therefore reverse the dismissal of claims except as to Donald Pierce and remand to the trial court for such further proceedings as may be necessary.

Affirmed in part, reversed in part.

STATON, J., concurs.

HOFFMAN, P. J., concurs in part and dissents in part and files separate opinion.

HOFFMAN, Presiding Judge, concurring and dissenting.

I concur in the majority's finding that the complaint was properly dismissed as to Donald Pierce, but I dissent to the ruling that the complaint was prematurely dismissed as to the other defendants.

In order to state a claim for relief based on negligence, a complaint must allege sufficient facts to establish: 1) a duty on the part of the defendant in relation to the

plaintiff, 2) failure on the part of the defendant to conform his conduct to the requisite standard of care required by the relationship, and 3) an injury to the plaintiff resulting from that failure. The complaint in the present case is fatally deficient in that it contains no allegations that demonstrate the existence of a duty owed by defendants to Mathes.

Mathes bases his complaint against Donald and Sheila Pierce on the fact that they are the natural parents of Kenneth and were negligent in their care and supervision of him. The complaint also contains an allegation that Kenneth was twenty years old at the time of the incident.

At common law, the general rule was that a parent was not liable for a child's torts. *See, Moore v. Waitt* (1973), 157 Ind. App. 1, 298 N.E.2d 456. Certain exceptions were carved out of this general principle. Thus, in *Broadstreet v. Hall* (1907), 168 Ind. 192, 80 N.E. 145, the Indiana Supreme Court held that a father was liable for the torts of his nine-year-old son, not by reason of a parent-child relationship, but rather, because they occupied the relationship of principal and agent, or master and servant. Another exception is found in *Repczynski v. Mikulak* (1927), 93 Ind.App. 491, 157 N.E. 464. There the Court held that a parent was liable for the damages caused by his fifteen-year-old son when the son negligently caused an automobile accident. The Court ruled that the parents themselves were negligent in consenting to their son's driving the automobile in violation of a statute.

The Legislature in 1957 enacted a statute to allow a victim, under certain circumstances, to recover damages from the parents of a child who commits a tort. IC 1971, 31–5–10–1 (Burns Code Ed.) (repealed) [1] provides:

> "Minors—*Malicious or wilful destruction of property*—Liability of parents.—Respecting *any minor under the age of eighteen [18] years*, the parent or parents with whom such minor is living and having custody of such minor, shall be liable for the actual damages sustained, but not exceeding the sum of seven hundred fifty dollars [$750] plus the court costs of the action, to any person, firm, association, corporation and the state of Indiana and its political subdivisions, including but without being limited to cities and towns, for any and all damage proximately caused by the injury to or destruction of any property, real, personal or mixed by the intentional or wilful or malicious act or acts of such minor." (Emphasis added.)

While it is apparent that in some cases a parent may be liable for the torts of a child, it is equally clear that such liability can only attach when the child is a minor. In the present case the complaint alleges that Kenneth had attained the age of majority. His parents were no longer legally responsible for his actions. The complaint therefore fails to state a claim against the parents.

The complaint also fails to state a claim against the grandparents. Mathes bases his claim of liability against the grandparents on their relationship of *in loco parentis* with Kenneth. A person who stands *in loco parentis* however, is charged only with the rights and duties of a parent. *See, Sturrup v. Mahan et al.* (1974), 261 Ind. 463, 305 N.E.2d 877. Inasmuch as the complaint fails to state a claim against the parents, it also fails to state a claim against the grandparents.

Mathes argues that Kenneth's parents and grandparents had a duty to control Kenneth which is similar to the duty of an owner of a vicious animal to prevent the animal from injuring others. He asks the question: "Should there be liability on a custodian for the vicious, irrational conduct of an animal, while at the same time there is no liability on the custodian for the vicious, irrational conduct of an insane man?"

I refuse to make the analogy which Mathes requests. In a society which guarantees the rights and privileges of its people such a comparison cannot be drawn. These rights and privileges may be cur-

---

1. For present law *see* IC 1971, 34–4–31–1 (1980 Burns Supp.).

tailed, but only after just cause and judicial intervention. Even a person who is allegedly insane is entitled to due process and a court determination of his sanity before he can be involuntarily subjected to the control and custody of another. The complaint nowhere suggests such a judicial determination was made. The case against the parents and grandparents was therefore properly dismissed for failing to state a claim.

Reduced to the essentials, the complaint alleges that the psychiatric centers were negligent in: 1) releasing Kenneth as an outpatient, 2) failing to use reasonable care to diagnose and treat Kenneth, 3) failing to initiate or recommend the commencement of a mental competency hearing, and 4) failing to make proper recommendations to Kenneth's parents and grandparents upon his release.

In order for the centers to have been negligent in releasing Kenneth, they must first have had a duty to confine him. Before such a duty can exist however, it must be determined if the psychiatric centers had any right to confine Kenneth.

At the time of the incident IC 1971, 16–14–9–1—16–14–9–31 (Burns Code Ed.)[2] governed the admission procedures for mentally ill persons. A reading of these statutes clearly illustrates the Legislature's proper regard for the constitutional rights of persons allegedly in need of commitment to a psychiatric institution. IC 1971, 16–14–9–9 provided in part: "The mental illness of any person who is alleged to be mentally ill *shall* be adjudged by the judges of the circuit or superior courts of the state of Indiana...." (Emphasis added.) Before a person could be committed to a psychiatric hospital, there had to be a sworn statement by both a reputable citizen and a physician filed with the clerk of the circuit or superior court. IC 1971, 16–14–9–12; IC 1971, 16–14–9–13. A court hearing was also required before commitment. IC 1971, 16–14–9–13—16–14–9–17. If it appeared to the judge that the person was mentally ill, he was required to enter an order for the commitment of the person. IC 1971, 16–14–9–18.

It is apparent from the statutes that a court order was necessary to confine a person in a psychiatric hospital against his will. It is possible that confinement, without judicial authority, could have rendered a psychiatric institution liable for false imprisonment. The complaint here does not contain any allegations that either psychiatric center was authorized to confine Kenneth. Without such allegations the complaint fails to show a duty on the part of the psychiatric hospitals to confine Kenneth and was therefore properly dismissed with respect to the centers' release of Kenneth as an outpatient.

A psychiatric hospital does have a duty to use reasonable care in the diagnosis and treatment of patients. It is also possible that a hospital has a duty to initiate mental competency hearings in appropriate cases. A hospital, through its physicians must exercise reasonable care in making judgments for the welfare of the patient. This duty however extends only to the patient and his family, not to members of the general public. Failure to use reasonable care may subject a hospital or physician to a medical malpractice action, but such an action may be initiated only by the patient or his immediate family. The duty to use reasonable care in the diagnosis and treatment, including commitment proceedings, does not exist for the benefit of strangers to the physician-patient relationship. The complaint therefore fails to state a claim for relief in this regard.

The issue of whether or not the psychiatric centers had a duty to make proper recommendations to Kenneth's parents and grandparents is not before this Court. Assuming that such a duty could exist, the crucial issue is to whom the duty extends. The duty would obviously be for the benefit and well-being of the patient and his family. Here again, the duty would not extend to members of the general public. A psychiatric center has no duty to members of

2. For present law *see* IC 1971, 16–14–9.1–1—16–14–9.1–18 (1980 Burns Supp.).

789

the general public to make recommendations to a patient's family as to restrictions of the patient's activities. The complaint therefore again fails to state a claim for relief in this regard.

. The allegations in the complaint fail to establish a duty on the part of the parents, grandparents or psychiatric centers which extends to the plaintiff. The existence of a duty is an essential element in a negligence action. It is also a question of law to be decided by the court. Failure to allege sufficient facts in the complaint to establish a duty is fatal to the plaintiff's action. I would therefore affirm the judgment of the trial court dismissing the action for failure to state a claim.