**Ann BECHT, Individually and as Executrix of the Estate of Donald Becht, Plaintiff–Appellee,**

v.

**OWENS CORNING FIBERGLAS CORPORATION, Defendant–Appellant,**

**Owens–Illinois Glass Company; W.R. Grace and Company, et al., Defendants.**

**No. 98–5387.**

United States Court of Appeals, Sixth Circuit.

Argued: June 18, 1999.

Decided and Filed: Nov. 12, 1999.

Kenneth L. Sales (argued and briefed), Joseph D. Satterley (briefed), Segal, Sales, Stewart, Cutler & Tillman, Louisville, Kentucky, Marc P. Weingarten (briefed), Greitzer & Locks, Philadelphia, Pennsylvania, for Plaintiff–Appellee.

John L. Dotson (argued and briefed), Donald K. Brown, Jr. (briefed), Eric A. Paine (briefed), James P. Grohman, O'Bryan, Brown & Toner, Louisville, Kentucky, for Defendant–Appellant.

Before: KRUPANSKY, RYAN, and SUHRHEINRICH, Circuit Judges.

## OPINION

RYAN, Circuit Judge.

The defendant, Owens–Corning Fiberglas Corporation, appeals the district court's denial of its motion for judgment as a matter of law in this asbestos-related injury case. A jury found in favor of Ann Becht, the plaintiff, and allocated 40% of the total liability to Owens–Corning. The defendant argues here, as it did in the trial court, that it is immune from tort liability under the Kentucky Workers' Compensation Act because it employed Donald Becht for nine months of his career as an asbes-

tos worker. Owens–Corning also disagrees with the jury's allocation of fault.

We hold that (1) under Kentucky law, Owens–Corning is not entitled to workers' compensation immunity, and (2) the jury's allocation of fault is supported by the evidence. Accordingly, we will affirm the district court's judgment.

## I.

As with many asbestos/injury cases, most of the important facts in this litigation are undisputed. It is not disputed that asbestos causes cancer; that Donald Becht died from malignant mesothelioma (a form of cancer); that his death was caused by his exposure to asbestos; that, until 1972, Owens–Corning manufactured insulating materials that contained asbestos; and that Becht was exposed to these insulating materials during his job as an insulator. Instead, Owens–Corning has two main points of contention, and we will focus our discussion of the facts regarding these two points.

First, Owens–Corning claims that Becht was its employee, thereby triggering the application of the workers' compensation exclusive remedy doctrine. Second, Owens–Corning disputes the jurors' allocation of fault; specifically, it disputes the amount of Owens–Corning's asbestos insulation to which Becht was exposed, compared to the amount to which he was exposed that was manufactured by other companies.

Becht had 27 years of exposure to asbestos, from 1953–1980. The only evidence introduced at trial tending to show that he was an employee of Owens–Corning is a social security printout which indicates that he worked for Owens–Corning for a total of nine months over a period of three years, 1961, 1965, and 1968. The social security records list Owens–Corning Fiberglas Corporation as Becht's employer. However, there was evidence presented that, when Becht worked for Owens–Corning, he was actually working for Owens–Corning Supply & Contracting (OCSC). The relationship between Owens–Corning and OCSC is unclear, and has become a pivotal issue on appeal. One coworker of Becht's testified that he believed that Owens–Corning and OCSC were separate entities; in other words, that Becht did not work for Owens–Corning at all, but rather, worked for OCSC, a different company. But in its response to the plaintiff's Request for Admission, Owens–Corning referred to OCSC as a "division" of Owens–Corning. Furthermore, the special interrogatories submitted to the jury asked the jurors to determine the percentage of Becht's total exposure to Owens–Corning asbestos-containing products that occurred while Becht "worked for Owens–Corning," as opposed to other employers. In response to that question, the jurors answered that 25% of Becht's exposure to Owens–Corning products occurred while Becht was employed by Owens–Corning.

The other factual dispute concerns the extent of Becht's exposure to Owens–Corning's products, as compared to other manufacturers' products. The evidence indicates that most insulation workers did not work for one company exclusively. When a company needed workers for a particular job, it would contact the union and request that a worker be sent to a particular job site. Typically, the worker would then be employed by the requesting company only for the duration of the particular job. Becht's employment history was an exception to this practice. He worked for Louisville Insulation Company (LISCO) for 24 of his 27 years in the business. LISCO is a distributor of Johns–Manville asbestos products, not Owens–Corning products. But there is some evidence that LISCO used Owens–Corning products occasionally, when the company could get the Owens–Corning products cheaper than the Johns–Manville products, or because the employees would run out of Johns–Manville products, and would "borrow" other products, including Owens–Corning's.

One of Becht's coworkers, Lowell Collard, testified that he worked a great deal of his career with Becht, and that during most of his career he, Collard, used Owens–Corning products. Collard also testified regarding specific jobs on which he worked with Becht, where Collard would be using Owens–Corning products. In addition, Collard testified that he often worked alongside workers who were employed by a different company, and who would use a different manufacturer's insulation than Collard was using; yet all would breathe the same dust generated by the asbestos. Another coworker, Charles Fleischer testified that he worked next to Becht a great deal, and used Owens–Corning products frequently. An expert, Dr. Arthur Frank, testified that each and every exposure to asbestos is a substantial contributing factor to the disease.

Among the instructions given to the jurors was one that required the jurors to assign fault to Becht, Owens–Corning, and other manufacturers or distributors of asbestos products. The jury assigned Becht 0% fault, Owens–Corning 40% fault, and others 60% fault. The court entered judgment against Owens–Corning in the amount of $554,346.44, 40% of the total verdict.

The district court refused to instruct the jury on the workers' compensation exclusive remedy principle, even though the defendant amended its answer to include it as an affirmative defense. But the court did instruct the jury as follows:

> You will now determine from the evidence what percentage of Donald Becht's total exposure to Owens Corning's asbestos-containing products occurred while he worked for Owens Corning as compared to what portion of his exposure to such products occurred while he worked for other employers.

The jury answered the interrogatory, indicating that 25% of Becht's total exposure occurred while he was working for Owens–Corning, and 75% occurred while he was working for other employers.

The defendant filed a motion for judgment as a matter of law under FED. R.CIV.P. 50, a motion for a new trial under FED.R.CIV.P. 59, and a motion for relief from judgment under FED.R.CIV.P. 60(b). In a conclusory, two-page order, the court denied all three motions. This appeal followed.

## II.

We review *de novo* the district court's denial of a motion for judgment as a matter of law brought under FED.R.CIV.P. 50. *See Hostetler v. Consolidated Rail Corp.*, 123 F.3d 387, 390 (6th Cir.1997).

Kentucky, as most other states, has a workers' compensation statute. It states, in part, that "the liability of such employer under this chapter shall be exclusive and in place of all other liability of such employer to the employee." KY.REV.STAT. ANN. § 342.690(1). This means that if an employee is injured on the job and is covered by workers' compensation, he cannot sue his employer under any tort theory. *See, e.g., Williams v. Eastern Coal Corp.*, 952 S.W.2d 696, 698 (Ky.1997). To enjoy this workers' compensation immunity from a suit in tort, a company must have employed an "employee."

It is unclear to us why the district court instructed the jury to assign a percentage of exposure to Owens–Corning products while Becht "worked" for Owens–Corning, but then refused to instruct the jury on the exclusive remedy provision under workers' compensation. It is also unclear why, when Owens–Corning raised this issue in its motions after the trial, the district court simply wrote a two-page order denying the motions without any analysis of the issue whatever. Nevertheless, we will decide the issue, even without the benefit of the district court's thinking because we are confident that the law governing the issue is clear.

Becht's argument is that the exclusive remedy provision does not apply because Owens–Corning did not employ Becht, but,

rather, OCSC employed Becht and OCSC is a subsidiary of Owens–Corning, a separate corporation, rather than a division of Owens–Corning. This distinction is relevant, because if OCSC, the entity that employed Becht, is a subsidiary, rather than a division, of Owens–Corning, then Owens–Corning would not be immune from tort liability based on the immunity of the subsidiary. *See Boggs v. Blue Diamond Coal Co.*, 590 F.2d 655, 663 (6th Cir.1979). Conversely, if OCSC is a division of Owens–Corning, then Owens–Corning would be immune from suit based on the workers' compensation exclusive remedy provision.

■ Immunity under the exclusive remedy provision of the workers' compensation statute is an affirmative defense that must be proven by the defendant. *See Gordon v. NKC Hosps., Inc.*, 887 S.W.2d 360, 362 (Ky.1994). Becht argues that Owens–Corning did not introduce any evidence that it employed Becht. Indeed, the only evidence in the record is social security printouts introduced by Becht, which reveal that Becht was employed by Owens–Corning. It is of no moment, of course, that Becht introduced this evidence for an entirely different purpose; it is permissible for one party to meet the opposite party's burden of proof. However, Becht argues that he raised the issue of whether OCSC is a subsidiary of Owens–Corning because one of Becht's coworkers testified that he believed OCSC was a separate entity from Owens–Corning. Therefore, Becht argues, because he raised the issue, Owens–Corning had the burden of presenting some evidence that OCSC was simply a division of Owens–Corning, rather than a separate subsidiary. However, we do not think the testimony of Becht's fellow insulation installer, whatever his skill as a tradesman, claiming that he "believed" the companies were separate entities, was sufficient to shift the burden of proceeding back to Owens–Corning. The witness was not shown to have any basis whatever for "believing" that OCSC was either a subsidiary or a division of Owens–Corning, or indeed to

have had any understanding of the difference in the two legal concepts. Whether a company is a subsidiary or a division of another company is primarily a legal issue, and should not be decided based on the testimony of a single fact witness.

Accordingly, we hold that the evidence is sufficient to warrant the conclusion that Owens–Corning did employ Becht, because the only reliable evidence on the question is a social security printout that lists Becht's employer as Owens–Corning for three, three-month periods.

■ That said, however, there remains another obstacle to Owens–Corning establishing that it is entitled to immunity based on workers' compensation exclusivity: Owens–Corning must prove that it paid for workers' compensation coverage in Kentucky. In *Gordon*, 887 S.W.2d 360, the Kentucky Supreme Court said that "KRS 342.690 requires an employer to secure payment of compensation as a condition of benefiting from the exclusive liability provision." *Id.* at 362. The statute also contemplates that if this duty is not met, *see* KY.REV.STAT. ANN. § 342.690(2), there may be a right to sue under tort law. Therefore, an employer has the duty to prove its compliance with this provision of the statute. *See Gordon*, 887 S.W.2d at 362.

Just as Owens–Corning did not produce any evidence to prove that it employed Becht (it later relied on evidence Becht introduced), it also did not introduce any evidence to prove that it "secure[d] payment of compensation" as required by KY. REV.STAT. ANN. § 342.690(1). It can point to only one piece of evidence to "prove" that it paid for workers' compensation coverage; an exhibit introduced by the plaintiff that lists workers' compensation claims filed by insulators against Owens–Corning. The plaintiff introduced the document to show that Owens–Corning was aware, as far back as 1958, that insulators were dying from exposure to asbestos. If this document proves that Owens–Corning secured workers' compensation coverage, it does not matter that the plaintiff introduced the document for an entirely differ-

ent purpose. However, the document identifies the location at which the claims were filed, and names 44 employees who filed workers' compensation claims against Owens–Corning in the past, but not one of the claims was filed in Kentucky. Apparently, Owens–Corning would have us infer that because they paid for workers' compensation coverage in other states, they must have paid for it in Kentucky. We decline to adopt that inference, especially considering that the burden lies with the defendant. *See Gordon,* 887 S.W.2d at 362–63.

 Owens–Corning also argues that KY.REV.STAT. ANN. § 342.316(1)(a) provides that only the last employer for whom the employee worked is liable for payment of workers' compensation for an occupational disease. This is true, but it has nothing to do with which employer is liable in tort; it only has to do with which employer is liable for workers' compensation payments, which is not the issue before us. Section 342.316 deals with claims for benefits, not with suits in tort. Accordingly, the defendant may not rely upon this statutory section to relieve it of liability. Therefore, we affirm the district court's judgment that Owens–Corning is liable for Becht's disease and death.

### III.

Owens–Corning's final claim of error is that its motion for a new trial should have been granted because the verdict was against the weight of the evidence. It argues that Becht spent most of his career working for LISCO, not Owens–Corning, and LISCO used primarily Johns–Manville products. The plaintiff responds that there was evidence presented that even when Becht was working for LISCO, he often used Owens–Corning products, and frequently worked side by side with insulators using Owens–Corning products, all breathing the same dust.

We would overturn a district court's denial of a new trial only upon a finding that the district court abused its discretion. *See Strickland v. Owens Corn-*

*ing,* 142 F.3d 353, 358 (6th Cir.1998). Appellate courts are reluctant to overturn a trial court's denial of a motion for a new trial on the ground that the verdict was against the weight of the evidence. *See id.* As long as it appears from the record that, in reaching its decision that the verdict is not against the clear weight of the evidence, the trial court complied with its duty to " 'compare the opposing proofs[ and] weigh the evidence,' " *id.* at 357 (citation omitted), we will conclude that the district court has not abused its discretion. The district court should not grant the motion just because another conclusion would have been more reasonable. *See id.*

In light of the deference we afford jury verdicts and district courts' refusal to overturn them, we believe that the district court did not abuse its discretion in refusing to grant Owens–Corning's motion for a new trial. The verdict appears to be well-supported in the record, and we do not believe it is our place to second guess the jury's conclusion.

### IV.

Accordingly, for all the reasons above, we **AFFIRM** the district court's judgment.