Christine SANDAGE and Arthur Shofner, Individually and as Personal Representative of the Supervised Estate of Sheena Sandage–Shofner, Deceased, and Christine Sandage, individually and as Personal Representative of the Supervised Estate of Alfonzo Small, Deceased, Appellants–Plaintiffs,

v.

The BOARD OF COMMISSIONERS OF VANDERBURGH COUNTY, Indiana, The Vanderburgh County Sheriff's Department, and Porter's Parking Area Maintenance, LLC., Appellees–Defendants.

No. 82A01–0807–CV–331.

Court of Appeals of Indiana.

Dec. 5, 2008.

Fred Schultz, Greene & Schultz, Bloomington, IN, Attorney for Appellants.

Mark D. Gerth, Kightlinger & Gray, Indianapolis, IN, Attorney for Appellees.

## OPINION

BROWN, Judge.

Christian Sandage and Arthur Shofner, individually and as personal representative

of the supervised estate of Sheena Sandage–Shofner, deceased, and Christine Sandage, individually and as personal representative of the supervised estate of Alfonzo Small, deceased, (collectively, "Appellants") appeal the trial court's grant of summary judgment to Porter's Parking Area Maintenance, LLC ("Porter's Parking"). The Appellants raise three issues, which we consolidate and restate as whether the trial court erred by granting the motion for summary judgment filed by Porter's Parking. We affirm.

The relevant facts designated by the parties follow. In 2004, Travis Moore was serving a four year sentence for robbery through Vanderburgh County Community Corrections.[1] Moore was eligible to participate in the work release program, and, around October of 2004, Porter's Parking hired Moore to clean parking lots. Moore's father, Roderick Moore, who also worked for Porter's Parking, informed Gregory Porter, one of the owners of Porter's Parking, that Moore had been incarcerated for robbery but assured him that he would make a good employee.

In January 2005, as a result of a drug screen administered by the Vanderburgh County Community Corrections facility, Moore tested positive for THC and methamphetamine. On February 2, 2005, a petition for revocation was filed against Moore citing the results of his drug screen and alleging, in addition, that he had over three hours of unaccountable time on January 30, 2005. Moore was placed in Vanderburgh County Jail until February 18, 2005, when he resumed working for Porter's Parking. Roderick Moore informed Gregory Porter that Moore had tested positive for THC.

On the evening of April 21, 2005, Moore drove himself to Porter's Parking to report for his shift at 8:00 p.m. Moore and another employee of Porter's Parking worked from 8:00 p.m. until around 2:00 a.m. cleaning parking lots throughout the Evansville area. According to the other employee, Moore seemed "pleasant and normal" while working that night. Appellants' Appendix at 214. Afterwards, instead of driving himself back to the Vanderburgh County Correctional Center, as required by the terms of his work release program, Moore drove to the apartment of Sheena Sandage–Shofner, broke into the apartment, and shot and killed Sandage–

---

1. A copy of Moore's presentence investigation report on white paper is located in the appellants' appendix. We remind the parties that Ind. Appellate Rule 9(J) requires that "[d]ocuments and information excluded from public access pursuant to Ind. Administrative Rule 9(G)(1) shall be filed in accordance with Trial Rule 5(G)." Ind. Administrative Rule 9(G)(1)(b)(viii) states that "[a]ll pre-sentence reports pursuant to Ind.Code § 35–38–1–13" are "excluded from public access" and "confidential." The inclusion of the presentence investigation report printed on white paper in the appellants' appendix is inconsistent with Trial Rule 5(G), which states, in pertinent part:

> Every document filed in a case shall separately identify information excluded from public access pursuant to Admin. R. 9(G)(1) as follows:

(1) Whole documents that are excluded from public access pursuant to Administrative Rule 9(G)(1) shall be tendered on light green paper or have a light green coversheet attached to the document, marked "Not for Public Access" or "Confidential." (2) When only a portion of a document contains information excluded from public access pursuant to Administrative Rule 9(G)(1), said information shall be omitted [or redacted] from the filed document and set forth on a separate accompanying document on light green paper conspicuously marked "Not For Public Access" or "Confidential" and clearly designating [or identifying] the caption and number of the case and the document and location within the document to which the redacted material pertains.

Shofner, Alfonzo Small, and Tara Jenkins. Moore then shot and killed himself.

On April 20, 2007, the Appellants filed a complaint for damages against Porter's Parking alleging that it had breached its duty to supervise Moore, had negligently hired and retained Moore, and was vicariously liable for the wrongful deaths of Sheena Sandage–Shofner and Alfonzo Small.[2] On June 21, 2007, Porter's Parking filed its response. On January 2, 2008, Porter's Parking filed a motion for summary judgment arguing that it had no duty to protect third parties from the criminal acts of a work-release inmate employee who was acting outside the scope of his employment. After a hearing, the trial court granted the motion.[3]

The issue is whether the trial court erred by granting the motion for summary judgment filed by Porter's Parking. Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(c); *Mangold ex rel. Mangold v. Ind. Dep't of Natural Res.*, 756 N.E.2d 970, 973 (Ind.2001). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmovant. *Mangold*, 756 N.E.2d at 973. Our review of a summary judgment motion is limited to those materials designated to the trial court. *Id.* We must carefully review a decision on summary judgment to ensure that a party was not improperly denied its day in court. *Id.* at 974. The Appellants

argue that Porter's Parking is liable as a matter of law for the wrongful deaths of Sandage–Shofner and Small because Porter's Parking: (1) assumed a duty to supervise Moore; (2) negligently hired and retained Moore; and (3) is vicariously liable under the theory of respondeat superior. We will address each argument separately.

### A. Duty to Supervise

■ The Appellants argue that Porter's Parking "gratuitously assumed a duty to properly supervise [Moore], a person they should have known was a dangerous individual." Appellant's Brief at 13. They cite *Estate of Mathes v. Ireland*, 419 N.E.2d 782 (Ind.Ct.App.1981), *reh'g denied*, in support of their argument.

In *Estate of Mathes*, Kenneth Pierce, recently released from psychiatric care, abducted the victim at knife point from a laundromat, drove her to a river, and drowned her. The victim's estate brought a wrongful death action against Pierce's parents and grandparents as well as two psychiatric centers that had treated Pierce. All the defendants filed motions for summary judgment, which the trial court granted. On appeal, we reversed the grant of summary judgment as concerned Pierce's mother and grandparents,[4] reasoning as follows:

> Mathes' argument as to the parents and grandparents can be simply stated. He asserts Pierce resided with his mother and grandparents. He believes they knew that Pierce was insanely violent

---

2. The Appellants also filed a complaint against the Board of Commissioners of Vanderburgh County and the Vanderburgh Sheriff's Department. On September 18, 2007, the Appellants, the Board of Commissioners of Vanderburgh County, and the Vanderburgh Sheriff's Department filed an agreed motion to stay proceedings, which the trial court granted. Neither the Board nor the Sheriff's Department is a party to this appeal.

3. The parties do not provide us with a transcript from this hearing.

4. We also reversed the grant of summary judgment as to the two psychiatric centers with an analysis not relevant to the present case. *See Estate of Mathes*, 419 N.E.2d at 785–786.

and dangerous. Mathes contends that as a result they had a responsibility to supervise Pierce and control his activities. He contends the breach of that duty resulted in Brenda Mathes' abduction and death.

As s 319, Restatement (Second) of Torts makes clear, the premise upon which the sought-for duty rests is not any familial relationship of the parties. It depends instead upon the actual assumption of care and control of one known to be dangerous:

> "One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm."

See also Sego v. Mains (1978), 41 Colo.App. 1, 578 P.2d 1069; Fisher v. Mutimer (1937), 293 Ill.App. 201, 12 N.E.2d 315; Whitesides v. Wheeler (1914), 158 Ky. 121, 164 S.W. 335.

\* \* \* \* \* \*

For the duty to exist there must therefore not only be an actual taking charge of the third person, there must also be a knowledge of the likelihood that he will cause bodily harm. Germane to that determination is the reliance such a custodian is reasonably entitled to place on expert medical, psychological or psychiatric advice.

Since the complaint against Pierce's mother and grandparents was broad enough to assert a claim on this theory of liability, we conclude it was prematurely dismissed.

419 N.E.2d at 784–785. We held, however, that the suit was properly dismissed against Pierce's father because it was clear that no custodial relationship existed between him and Pierce. See id. at 785.

In the present case, the designated evidence reveals that Moore was an employee of Porter's Parking on work release. Under the terms of the work release program, Moore was to return to the community corrections facility at the end of his shift. On the night in question, rather than returning to the facility, at the end of his shift Moore drove himself to Sandage–Shofner's apartment and committed the murders. The Appellants have presented no evidence that Porter's Parking was responsible for returning Moore to the facility, that Porter's Parking assumed care and control over Moore, or that its relationship with Moore was custodial in nature. Accordingly, we must reject the Appellants' argument that Porter's Parking had taken charge of Moore or assumed care and control over him knowing that he was likely to cause bodily harm to others. See, e.g., Baugher v. A. Hattersley & Sons, Inc., 436 N.E.2d 126, 128 n. 1 (Ind.Ct.App.1982) (holding that there was no custodial relationship implicating the reasoning in Estate of Mathes between employer and employee where employee, on parole for armed robbery, abducted, raped, beat, and locked up two women on the employer's premises), trans. denied.

## B. Negligent Hiring and Retention

Next, the Appellants argue that Porter's Parking was negligent in hiring and retaining Moore because it knew or should have known about Moore's criminal history and drug use. Indiana recognizes the tort of negligent hiring and retention of an employee. Konkle v. Henson, 672 N.E.2d 450, 454 (Ind.Ct.App.1996). Indiana has adopted the RESTATEMENT (SECOND) OF TORTS § 317 (1965) as the

standard with regard to this tort.[5] *Id.; Frye v. American Painting*, 642 N.E.2d 995, 998 (Ind.Ct.App.1994). Under the Restatement, to determine whether an employer is liable for negligent hiring or retention of an employee, the court must determine if the employer exercised reasonable care. *Konkle*, 672 N.E.2d at 454–455; RESTATEMENT (SECOND) OF TORTS § 317 (1965).

■ However, "[t]here are general rules and concepts surrounding the imposition of a duty of care that must also be satisfied." *Clark v. Aris, Inc.*, 890 N.E.2d 760, 763 (Ind.Ct.App.2008), *trans. denied*. Specifically, the Indiana Supreme Court has clarified that to determine whether to impose a duty of care, three factors must be considered: (1) the relationship between the parties, (2) the reasonable foreseeability of harm to the person injured, and (3) public policy concerns. *Id.* (citing *Webb v. Jarvis*, 575 N.E.2d 992, 995 (Ind. 1991)). More specifically,

> [i]mposition of a duty is *limited to those instances where a reasonably foreseeable victim is injured by a reasonably foreseeable harm.* Thus, part of the inquiry into the existence of a duty is concerned with exactly the same factors as is the inquiry into proximate cause. Both seek to find what consequences of the challenged conduct should have been foreseen by the actor who engaged in it. We examine what forces and human conduct should have appeared likely to come on the scene, and we weigh the dangers likely to flow from the challenged conduct in light of these forces and conduct.

*Id.* at 764 (quoting *Webb*, 575 N.E.2d at 995). In other words, the foreseeability component of duty requires a general analysis of the broad type of plaintiff and harm involved, without regard to the facts of the actual occurrence. *Id.* Ordinarily, whether a duty exists is a question of law for the court to decide. *Id.* (citing *Rhodes v. Wright*, 805 N.E.2d 382, 386 (Ind.2004)). "Sometimes, however, the existence of a duty depends upon underlying facts that require resolution by the trier of fact." *Id.*

In *Clark*, an employer hired Fredrick Baer to work on traffic control crews at

---

5. Section 317 provides:
A master is under a duty to exercise reasonable care so to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if
(a) the servant
(i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or
(ii) is using a chattel of the master, and
(b) the master
(i) knows or has reason to know that he has the ability to control his servant, and
(ii) knows or should know of the necessity and opportunity for exercising such control.
COMMENT:
\* \* \* \* \* \*
c. *Retention in employment of servants known to misconduct themselves.* There may be circumstances in which the only effective control which the master can exercise over the conduct of his servant is to discharge the servant. Therefore the master may subject himself to liability under the rule stated in this Section by retaining in his employment servants who, to his knowledge, are in the habit of misconducting themselves in a manner dangerous to others. This is true although he has without success made every other effort to prevent their misconduct by the exercise of his authority as master. Thus a railroad company which knows that the crews of its coal trains are in the habit of throwing coal from the cars as they pass along tracks laid through a city street, to the danger of travelers, is subject to liability if it retains the delinquents in its employment, although it has promulgated rules strictly forbidding such practices.

construction sites. The employment application queried whether Baer had ever been convicted of a crime, to which Baer replied, "Yes," and, when asked to state the details of any convictions, Baer wrote, "Will explain (burglary)." *Id.* at 762. The employer never performed a criminal background check, which would have revealed Baer's criminal history, including convictions for two counts for burglary as class B felonies, two counts of theft as class D felonies, and receiving stolen property as a class D felony. One day, while working under the employer's supervision, Baer left the job site, drove in his own vehicle to a residence, and murdered the family living there.

The family's estate filed a complaint against the employer for negligent hiring and retention of Baer. The trial court granted the employer's motion for summary judgment, and we affirmed, holding that the employer did not have a duty of care to the victims. We reasoned:

Aris hired Baer to flag traffic at a construction site. This job did not put him into personal contact with citizens, it did not provide access to people's homes or property, and it authorized him to do nothing more than stand on the street and control the flow of traffic. To commit the murders of the Clarks, Baer left his job in the middle of a shift, got into his personal vehicle, drove several miles, broke into the Clarks' residence, and murdered Cory and Jenna Clark. Tr. p. 6. We simply cannot conclude that Cory and Jenna Clark, who lived miles from the construction site in a residence that Baer was not authorized to enter for any purpose whatsoever, were reasonably foreseeable victims, or that the tragic harm that befell them was reasonably foreseeable. It would be a closer call if Baer had carjacked a vehicle passing by the construction site, inasmuch as it could be argued that the

vehicle's owner would be a more foreseeable victim than the Clarks. But given these facts, we find as a matter of law that the Clarks were not reasonably foreseeable victims who were injured by a reasonably foreseeable harm. Thus, as a matter of law, Aris did not have a duty of care to the Clarks and the trial court properly granted summary judgment in Aris's favor.

*Id.* at 765 (footnote omitted).

In contrast, in *Frye v. American Painting Co.*, 642 N.E.2d 995 (Ind.Ct.App.1994), we reversed the grant of summary judgment where the employer, a painting company, enabled its employee, a known arsonist, thief, and burglar, to access the inside of clients' homes. The plaintiff hired the employer to paint his house, and the employee, while working there, rifled through a closet and discovered some cash and credit cards. The employee later burglarized and set fire to the house and used the credit cards he had stolen. Based on these facts, we concluded that the questions of whether the employer should have foreseen that the employee posed a danger to its customers and whether it breached its duty to the plaintiff by retaining the employee should be resolved by a jury. *See id.* at 999.

In the present case, Moore left his place of employment at the end of his shift, drove himself to Sandage–Shofner's apartment, broke into the apartment, and committed the murders. Moore's employment did not put him in contact with the victims, and Moore was not authorized to enter the apartment by virtue of his employment. Furthermore, unlike in *Frye*, the murders in this case did not constitute a recurrence of criminal behavior for which Moore had been earlier convicted. *See Clark*, 890 N.E.2d at 765 n. 1 ("[A]lthough Baer's criminal history is replete with a number

of convictions for burglary, theft, and receiving stolen property, nothing in that history should have suggested to Aris that he was capable of murder."). Accordingly, we find as a matter of law that the victims in this case were not reasonably foreseeable victims who were injured by a reasonably foreseeable harm. Thus, as a matter of law, Porter's Parking did not have a duty of care to Sandage–Shofner, Small, and Jenkins, and the trial court properly granted summary judgment in favor of Porter's Parking. *See id.* at 765; *Baugher*, 436 N.E.2d at 128 (holding that victim appellants were beyond the scope of the duty owed by the employer to the public).

## C. *Respondeat Superior*

■ Finally, the Appellants argue that Porter's Parking is vicariously liable for Moore's actions because, as an inmate on work release, Moore "was acting within the course and scope of his employment when he shot and killed" Sandage–Shofner and Small. Appellant's Brief at 25. The general rule is that vicarious liability will be imposed upon an employer under the doctrine of respondeat superior where the employee has inflicted harm while acting "within the scope of employment." *Barnett v. Clark*, 889 N.E.2d 281, 283 (Ind. 2008) (citing *Sword v. NKC Hospitals, Inc.*, 714 N.E.2d 142, 148 (Ind.1999); *Warner Trucking, Inc. v. Carolina Cas. Ins. Co.*, 686 N.E.2d 102, 105 (Ind.1997); *Helfrich v. Williams*, 84 Ind. 553, 554–55 (1882)). And in order for an employee's act to fall "within the scope of employment," the injurious act must be incidental to the conduct authorized or it must, to an appreciable extent, further the employer's business. *Id.* (citing *Celebration Fireworks, Inc. v. Smith*, 727 N.E.2d 450, 453 (Ind.2000)).

■ The Restatement of Agency advises that "[a]n employer is subject to vicarious liability for a tort committed by its employee acting within the scope of employment." *Id.* at 284 (quoting RESTATEMENT (THIRD) OF AGENCY, §§ 2.04, 7.07(1) (2006)). Further, "[a]n employee acts within the scope of employment when performing work assigned by the employer or engaging in a course of conduct subject to the employer's control. An employee's act is *not* within the scope of employment when it occurs *within an independent course of conduct* not intended by the employee *to serve any purpose of the employer*." *Id.* (quoting RESTATEMENT (THIRD) OF AGENCY, § 7.07(2)). Comment c to Section 7.07 explains that "[a]n employee may engage in conduct, part of which is within the scope of employment and part of which is not." *Id.* To illustrate this principle, the Comment describes an employee driving a truck in the scope of employment, and who becomes irate at another motorist, leans out the truck cab, and shoots the driver whose conduct enraged him. *Id.* While the shooting occurred in the midst of the employee's duties of employment, the shooting "is not within the scope of employment." *Id.* (quoting RESTATEMENT (THIRD) OF AGENCY, § 7.07 cmt. c). Situations may arise, however, in which vicarious liability may be imposed upon employers for the tortious or criminal acts of their employees. *Id.*

Here, under the terms of the work release program, Moore was to return to the community corrections facility at the end of his shift. However, on the night in question, rather than complying with the work release program, Moore drove himself to Sandage–Shofner's apartment and committed the murders. In light of the designated evidence, we cannot say that Moore's actions constituted conduct authorized by Porter's Parking, or were in furtherance of the business or interests of Porter's Parking. Moreover, the Appellants cite no au-

thority, and we find none, for the proposition that an employer is vicariously liable for all acts of an employee simply because the employee is an inmate on work release. Accordingly, we conclude that Moore's murderous acts did not fall with the scope of his employment with Porter's Parking, and thus that Porter's Parking is not vicariously liable under the doctrine of respondeat superior. *See id.* at 286 (holding that township trustee was not liable for employee's battery and sexual battery of victim where employee's acts were not authorized by trustee, did not further trustee's business, and were not motivated to any extent by trustee's interests).

For the foregoing reasons, we affirm the trial court's grant of the motion for summary judgment filed by Porter's Parking.

Affirmed.

BAKER, C.J. and MATHIAS, J. concur.