2011 ND 240

**Leah RICHARD, Plaintiff and Appellant,**

v.

**WASHBURN PUBLIC SCHOOLS, Defendant and Appellee.**

**No. 20110045.**

Supreme Court of North Dakota.

Dec. 15, 2011.

Daniel James Kelsch, Washburn, N.D., for plaintiff and appellant.

Tiffany Lynn Johnson (argued) and Gary R. Thune (on brief), Bismarck, N.D., for defendant and appellee.

CROTHERS, Justice.

[¶ 1] Leah Richard appeals from a judgment dismissing her claims for negligent hiring, supervision and retention, and assault and battery against Washburn Public Schools ("the District"). We affirm the district court's dismissal of Richard's claims for negligent hiring and assault and battery, which she does not challenge on appeal. We reverse dismissal of Richard's claims for negligent supervision and retention because the court erred in concluding those claims were barred by the exclusive remedy provisions of the Workforce Safety and Insurance Act. We affirm the judgment in part, reverse in part, and remand for further proceedings.

I

[¶ 2] In November 2001, Richard, a sixteen-year-old student at Washburn High School, began working as a part-time custodian for the District. Gary Fuchs was the head custodian and Richard's supervisor. Richard alleges that during her employment with the District, which ended in 2003, Fuchs subjected her to "inappropriate conduct . . . including sexual comments and touching." Richard explained in her deposition that Fuchs would talk "in a sexual manner to everyone sitting down, whether we were on coffee break or . . . in the hallway . . . whether he was speaking to me or to another individual, it was

very—... just very demeaning." The first two physical incidents involved Fuchs allegedly "putting a chokehold" on Richard. In her deposition, Richard described the incidents:

"A. Previous to February 2003 Mr. Fuchs had put his hand around my neck. I had asked for time off one time. I believe my mom had time off at the same time. And ... we had to have Ann Reisenauer fill in for us, so he didn't—he did not like that. And the second time I didn't roll up the vacuum cleaner cord the way he wanted me to. And definitely some anger issues there.

Q. Why didn't he—so you're saying he put his hands around your neck because he didn't want Ann Reisenauer to fill in for you?

. . . .

A. I think because he had to find someone ... to fill in. And I don't remember if it was a short period of time like a short notice ... or what, but I do remember I did ask for time off. And it was the back—it was the back of the neck, and it was very—like a hard hold."

Richard did not report these incidents to the District.

[¶ 3] The third physical incident involved Fuchs allegedly grabbing Richard and telling her to bend over. Richard testified:

"A. I would say it was February—it was a few months before that, it was February 2003 was when I was vacuuming in Holly Becker's room, her kindergarten room, because at the time she was principal and kindergarten teacher. And she had a mirror sitting on the floor by the sink. And he told me to bend over.... [H]e was behind me, so ... I was creeped out ... even more. And ... he continually told—like demanded that I bend over. Well, finally he took

my neck, pushed me down by the mirror and ... said that I had black on my nose. And he was behind me.

So it's like just completely crossing the line. And ... I definitely told my mom about this.... I just—I didn't know what to do."

Richard's mother, Connie Kelsh, reported the incident to the elementary school principal, Holly Becker. According to Kelsh, Becker said, " 'Well, that's just how Gary is, rough.' " Becker did not address the issue or relay the information to others, but told Kelsh to contact Robert Tollefson, the superintendent. Kelsh did not contact Tollefson.

[¶ 4] The fourth incident involved Fuchs allegedly putting his hands inside the front of Richard's pants and pulling her toward him. Richard testified:

"A.... [W]ell, what happened when Mr. Fuchs asked me about kissing my boyfriend, I was vacuuming in front of Mrs. Holland's room, and he came right in front of me so I turned my vacuum cleaner off. And he was standing maybe—like if that was one door, so maybe four feet, maybe, away from me. Turned off my vacuum cleaner looking at him. And he said, 'I saw you kissing your boyfriend the other day while you were rollerblading.' And I said ... 'It's none of your business, so' ... just kind of feel violated. And he then came up to me, put his hands in my pants and pulled me towards him. It wasn't an up motion like Mr. Weinmann had described. Pulled me towards him. And I think he saw the shock on my face and let go. And ... it was like what—what did that—what does that matter to you ... ? You're my employer and my supervisor. And I immediately after that went into the room with Shar because I just—I didn't know what to say. I didn't—I was completely shocked that

that would happen. And he stuck around for maybe, I would say, five— five minutes, and he was acting differently. So I could tell immediately that he knew he did wrong."

Kelsh informed Tollefson about this incident, resulting in the District ordering Fuchs to avoid contact with Richard and to participate in an improvement plan.

[¶ 5] Richard quit her job with the District in August 2003, shortly before beginning her senior year in high school. Fuchs occasionally had contact with Richard. Richard would observe Fuchs inside her classroom and in common areas within the school. Richard testified:

"A. I don't remember specifically times. I remember two incidents, though, more vividly. I was in Ms. Mayer's classroom one time for English, and I believe he was dropping boxes off. It wasn't an emergency by any means. The second time I was in study hall and he was just glaring at me."

Richard retained an attorney, who wrote a letter informing the District of Fuch's conduct and requesting that Fuchs avoid all contact with Richard and her sister. The District agreed with the attorney's proposal and issued a written directive to Fuchs.

[¶ 6] In April 2006, Richard sued the District seeking damages based on claims of negligent hiring, supervision and retention of Fuchs, and assault and battery. Richard sought in excess of $180,000, alleging that she "has suffered and will continue to suffer remorse, humiliation, mental anguish, loss of respect of friends and family, nervousness and inability to sleep, headaches, irritability, and financial loss," and that she "will have to undergo treatment with ... medical/mental health professionals in an attempt to correct the damage done."

[¶ 7] The district court granted the District's motion for summary judgment dismissing Richard's claims. The court dismissed the negligent hiring claim, concluding Fuch's conduct was not foreseeable as a matter of law because Richard produced no evidence showing the District knew or should have known Fuchs would harass or physically touch co-workers. The court dismissed the assault and battery claim, concluding it was barred by the two-year statute of limitations in N.D.C.C. § 28–01–18(1). Although the court determined genuine issues of material fact existed regarding Richard's claims for negligent supervision and retention, the court dismissed those claims on the ground they were precluded by the exclusive remedy provisions of the Workforce Safety and Insurance Act, N.D.C.C. tit. 65. The court further rejected Richard's reliance on the intentional injuries exception to application of the Workforce Safety and Insurance Act under N.D.C.C. § 65–01–01.1, concluding she produced no evidence showing the District intentionally inflicted Richard's injuries.

## II

[¶ 8] Richard argues the district court erred in granting summary judgment dismissing her claims for negligent supervision and retention. Richard does not challenge the court's dismissal of her claims for negligent hiring and assault and battery.

[¶ 9] We address the issues under the standards for reviewing a grant of summary judgment:

"Summary judgment is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. A party moving for summary

judgment has the burden of showing there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. In determining whether summary judgment was appropriately granted, we must view the evidence in the light most favorable to the party opposing the motion, and that party will be given the benefit of all favorable inferences which can reasonably be drawn from the record. On appeal, this Court decides whether the information available to the district court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law. Whether the district court properly granted summary judgment is a question of law which we review de novo on the entire record."

*Loper v. Adams*, 2011 ND 68, ¶ 19, 795 N.W.2d 899 (quoting *Brown v. Montana–Dakota Utils., Co.*, 2011 ND 38, ¶ 3, 794 N.W.2d 741).

## A

[¶ 10] Richard argues the district court erred in concluding her claims for negligent supervision and retention against the District were precluded by the exclusive remedy provisions of the Workforce Safety and Insurance Act, N.D.C.C. tit. 65.

[¶ 11] Section 65–01–01, N.D.C.C., declares that "for workers injured in hazardous employments, . . . sure and certain relief is hereby provided regardless of questions of fault and to the exclusion of every other remedy, proceeding, or compensation, except as otherwise provided in this title, and to that end, all civil actions and civil claims for relief for those personal injuries and all jurisdiction of the courts of the state over those causes are abolished except as is otherwise provided in this title." In *Trinity Hosps. v. Mattson*, 2006 ND 231, ¶ 11, 723 N.W.2d 684, we explained:

"The workers' compensation act, N.D.C.C. tit. 65, is a legislatively created compromise for claims between injured workers and their employers. *Cervantes v. Drayton Foods, L.L.C.*, 1998 ND 138, ¶ 6, 582 N.W.2d 2. Under the workers' compensation act, an employee generally gives up the right to sue the employer in exchange for sure and certain benefits for all workplace injuries, regardless of fault. *Id. See* N.D.C.C. § 65–01–01. An 'employee' is 'a person who performs hazardous employment for another for remuneration,' and an 'employer' is 'a person who engages or received the services of another for remuneration.' N.D.C.C. § 65–01–02(16) and (17). Under N.D.C.C. § 65–01–08, injured employees do not have a claim for relief against a 'contributing employer or against any agent, servant, or other employee of the employer for damages for personal injuries, but shall look solely to the fund for compensation.' Section 65–04–28, N.D.C.C., provides that '[e]mployers who comply with the provisions of [N.D.C.C. ch. 65–04] shall not be liable to respond in damages at common law or by statute for injury to or death of any employee.' Under N.D.C.C. § 65–05–06, '[t]he payment of compensation or other benefits by the organization to an injured employee, or to the injured employee's dependents in case death has ensued, are in lieu of any and all claims for relief whatsoever against the employer of the injured or deceased employee.'"

[¶ 12] The district court in which a tort action is filed has the authority to determine whether the action is barred by the exclusive remedy provisions of the workers compensation act. *See, e.g., Mattson*, 2006 ND 231, ¶ 1, 723 N.W.2d 684; *Cervantes v. Drayton Foods, L.L.C.*, 1998 ND 138, ¶ 1, 582 N.W.2d 2; *Zimmer-*

*man by Zimmerman v. Valdak Corp.,* 1997 ND 203, ¶ 26, 570 N.W.2d 204; *Mitchell v. Sanborn,* 536 N.W.2d 678, 686 (N.D.1995); *Wald v. City of Grafton,* 442 N.W.2d 910, 912 (N.D.1989); *Schlenk v. Aerial Contractors, Inc.,* 268 N.W.2d 466, 468 (N.D.1978). In a tort action by an employee to recover damages for a work-related injury, the employer has the burden of establishing by a preponderance of the evidence the defense that the employer is immune from suit under the exclusive remedy provisions of the workers compensation act. *See Becht v. Owens Corning Fiberglas Corp.,* 196 F.3d 650, 654 (6th Cir.1999) (applying Kentucky law); *Romero v. Kansas City Station Corp.,* 98 S.W.3d 129, 138 (Mo.Ct.App.2003), *overruled on other grounds in McCracken v. Wal–Mart Stores East, LP,* 298 S.W.3d 473 (Mo. 2009); *Smith v. Roman Catholic Diocese,* 252 A.D.2d 805, 677 N.Y.S.2d 183, 184 (N.Y.App.Div.1998); 6 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 100.01[2] (2011), and cases collected therein.

■ [¶ 13] The Workforce Safety and Insurance Act "generally provides the exclusive remedy for an employee who suffers a compensable injury." *Mitchell,* 536 N.W.2d at 683. A "compensable injury" is defined as "an injury by accident arising out of and in the course of hazardous employment which must be established by medical evidence supported by objective medical findings." N.D.C.C. § 65–01–02(10). A "compensable injury" includes:

> "A mental or psychological condition caused by a physical injury, but only when the physical injury is determined with reasonable medical certainty to be at least fifty percent of the cause of the condition as compared with all other contributing causes combined, and only when the condition did not preexist the work injury."

N.D.C.C. § 65–01–02(10)(a)(6). A "compensable injury" does not include "[a] mental injury arising from mental stimulus." N.D.C.C. § 65–01–02(10)(b)(10). North Dakota therefore does not allow compensation for what are known within the parlance of workers compensation law as "mental-mental" injuries. *See* 3 Larson, *supra,* § 56.06[4].

[¶ 14] In this case, the District argues Richard's alleged psychological injuries stem from "physical trauma" or a "physical assault" caused by Fuchs. To the extent the District's argument is based on Richard pleading an action for assault and battery, we agree with the authors in 6 Larson, *supra,* § 104.05[1], that the element of damage must be considered along with the legal components of the tort:

> "Here we are fortunate in having an actual decided case that makes the point. In *Ritter v. Allied Chemical Corporation,* [295 F.Supp. 1360 (D.S.C. 1968), *aff'd,* 407 F.2d 403 (4th Cir.1969),] plaintiff brought suit against her employer for an assault by one of her superiors. She stated that the only result of the assault was a scratch on her hand and some soreness, and did not claim any disability or other elements which might have provided compensation under the workers' compensation laws of South Carolina. Because the injuries for which plaintiff was suing were not those which were covered by the compensation act, the court held that, on defendant's motion for judgment on the pleadings, the tort action against the employer was not barred.

> "This case is a reminder of the fact that, as every law student should know by his or her third week, the tort of assault does not require physical injury or even touching. Its minimal essence is putting the victim in fear of bodily harm. If bodily harm accompanies as-

sault, as it usually does, the exclusiveness bar comes into play. If bodily harm does not accompany assault, the exclusiveness bar does not come into play. The conclusion must be that the test is not just the legal ingredients of assault, but also the results—specifically whether physical injury of the kind dealt with by the compensation act is produced.

"To summarize: If the essence of the tort, in law, is non-physical, and if the injuries are of the usual non-physical sort, with physical injury being at most added to the list of injuries as a make-weight, the suit should not be barred. But if the essence of the action is recovery for physical injury or death, *including in 'physical' the kinds of mental or nervous injury that cause disability,* the action should be barred even if it can be cast in the form of a normally non-physical tort."

6 Larson *supra,* § 104.05[1] (footnotes omitted).

[¶ 15] Here, Richard did not seek and was not awarded workers compensation benefits for her injuries. In her complaint, Richard alleged Fuchs engaged in "inappropriate conduct ... including sexual comments and touching." The briefs and record do not identify any specific physical injury suffered by Richard. Richard essentially claims she suffered mental or psychological injuries caused by sexual harassment by Fuchs. The essence of Richard's actions are not recovery for physical injuries, but for non-physical injuries.

[¶ 16] The district court found persuasive, and the District relies upon, the South Dakota Supreme Court's decision in *Benson v. Goble,* 1999 SD 38, 593 N.W.2d 402, for the proposition that Richard's action is barred by the exclusive remedy provisions of the Workforce Safety and Insurance Act. In *Goble,* the plaintiff employee sued a co-employee and his employer for negligent supervision and retention of the co-employee and vicarious liability for the co-employee's intentional tortious conduct. *Id.* at ¶ 7. The co-employee was the plaintiff's supervisor who, in addition to often verbally berating the plaintiff, physically assaulted and had a physical altercation with the plaintiff. *Id.* at ¶¶ 2–5. The supervisor "hit [plaintiff] on top of the head," "there were incidents where [the supervisor] would kick [plaintiff]," once "in front of two co-workers," and there was an incident where "[the supervisor] hit [plaintiff] on the side of the head, causing [plaintiff's] eyeglasses to go flying." *Id.* at ¶¶ 3–4. The plaintiff claimed he "suffered damages and losses consisting of mental and psychological disorders, loss of income, [and] loss of enjoyment of life." *Id.* at ¶ 7.

[¶ 17] South Dakota allowed compensation for "mental-physical and physical-mental" injuries, but did not allow compensation for "mental-mental" injuries. *Goble,* 1999 SD 38, ¶ 13, 593 N.W.2d 402; *see also* S.D. Codified Laws § 62–1–1(7) (2009) (Compensable injury "does not include a mental injury arising from emotional, mental, or nonphysical stress or stimuli. A mental injury is compensable only if a compensable physical injury is and remains a major contributing cause of the mental injury, as shown by clear and convincing evidence."). The South Dakota Supreme Court affirmed summary judgment dismissing the plaintiff's action because it was barred by the exclusivity provisions of the workers compensation law:

"There is no dispute [plaintiff] suffered at least one physical assault where [supervisor] hit him along side of the head, causing [plaintiff's] glasses to fly off. Additionally, there are other alleged physical assaults consisting of [su-

pervisor] physically kicking [plaintiff] in the buttocks, [supervisor] kicking [plaintiff] so hard in the back of the legs that [plaintiff] was forced to the ground, and [supervisor] thumping [plaintiff] on the head. [Plaintiff] claims no physical injury, but that the assaults caused him mental distress. Such physical assaults place [plaintiff] in the physical-mental category. Thus, [plaintiff's] tort action filed against [the employer] is barred by the exclusive remedy provision of workers' compensation."

*Goble*, 1999 SD 38, ¶ 15, 593 N.W.2d 402.

[¶ 18] While we agree an employee suffering compensable physical injuries cannot avoid exclusivity provisions by simply claiming non-physical injuries in a tort action, we think *Goble* is different from this case. First, under South Dakota law, to fall within the "physical-mental" category a claimant need show only that a compensable physical injury was "a" major contributing cause of the mental injury, not that it was "the" major contributing cause. *See* S.D. Codified Laws § 62–1–1(7) (2009); *Brown v. Douglas Sch. Dist.*, 2002 SD 92, ¶ 23, 650 N.W.2d 264. Under North Dakota law, a "physical-mental" injury is compensable "only when the physical injury is determined with reasonable medical certainty to be at least fifty percent of the cause of the condition as compared with all other contributing causes combined." N.D.C.C. § 65–01–02(10)(a)(6). Second, we cannot equate the alleged physical "touching[s]" here with the physical assaults and beatings experienced by the plaintiff in *Goble*.

[¶ 19] It is unnecessary to decide whether Richard's allegations constitute "an injury by accident arising out of and in the course of hazardous employment" within the meaning of N.D.C.C. § 65–01–02(10). Courts appear divided over whether sexual harassment constitutes an injury

by accident for purposes of workers compensation laws. *See* L. Sharp, Annotation, *Workers' Compensation as Precluding Employee's Suit Against Employer for Sexual Harassment in the Workplace*, 51 A.L.R.5th 163, § 4 (1997). Some courts say yes. *See, e.g., McPherson v. City of Waukegan*, 379 F.3d 430, 442 (7th Cir. 2004) (applying Illinois law); *Dickert v. Metropolitan Life Ins. Co.*, 311 S.C. 218, 428 S.E.2d 700, 702 (1993). Other courts say no. *See, e.g., Ford v. Revlon, Inc.*, 153 Ariz. 38, 734 P.2d 580, 586 (1987); *Coates v. Wal–Mart Stores, Inc.*, 127 N.M. 47, 976 P.2d 999, 1005 (1999); *Williams v. Garraghty*, 249 Va. 224, 455 S.E.2d 209, 218 (1995); *Lentz v. Young*, 195 Wis.2d 457, 536 N.W.2d 451, 458 (Wis.Ct.App.1995). In this case, even if the allegations of sexual harassment constitute an injury by accident, we conclude the District has failed to show Richard has suffered an injury that is compensable under the Act. Consequently, we conclude the exclusive remedy provisions of the Act do not bar Richard's actions. *See generally* 6 Larson, *supra*, § 104.05[4]; *Sisco v. Fabrication Techs., Inc.*, 350 F.Supp.2d 932, 943 (D.Wyo.2004).

### B

[¶ 20] The District argues Richard's claims for negligent supervision and retention are precluded by the North Dakota Human Rights Act, N.D.C.C. ch. 14–02.4.

[¶ 21] Section 14–02.4–19(2), N.D.C.C., specifically provides that "[a]ny person claiming to be aggrieved by any discriminatory practice other than public services or public accommodations in violation of this chapter may file a complaint of discriminatory practice with the department *or*, except as limited by this section, may bring an action in the district court...." (Emphasis added.) Under language of the statute, Richard had the option of either

filing a complaint with the Labor Department or bringing an action in district court seeking an award of damages. *See Schuhmacher v. North Dakota Hosp. Ass'n,* 528 N.W.2d 374, 377 (N.D.1995).

[¶ 22] Richard chose to bring an action and we conclude her claims are not precluded by the North Dakota Human Rights Act.

## C

■ [¶ 23] The District argues summary judgment dismissing Richard's claims for negligent supervision and retention was nevertheless proper because Fuchs's conduct was not foreseeable, it took appropriate actions to prevent harassment from occurring, and it took appropriate action after learning of Fuchs's conduct.

■ [¶ 24] "A claim for negligent supervision may arise when an employer fails to exercise ordinary care in supervising the employment relationship to prevent the foreseeable misconduct of an employee from causing harm to other employees or third persons." *Koehler v. County of Grand Forks,* 2003 ND 44, ¶ 28, 658 N.W.2d 741; *see also Nelson v. Gillette,* 1997 ND 205, ¶¶ 39–41, 571 N.W.2d 332. In *Gingerich v. City of Elkhart Prob. Dep't,* the court discussed the elements for a claim of negligent retention:

"To succeed on a negligent retention claim, [the plaintiff] has the burden of establishing the following elements: '(1) a duty of care owed by an employer to a third person; (2) breach of that duty; and (3) injury to the third person proximately caused by the employer's breach.' *Scott v. Retz,* 916 N.E.2d 252, 257 (Ind.App.2009). Under the first prong, to determine whether a duty of care will be imposed, the court considers the relationship between the parties, the foreseeability of harm to the injured

person, and public policy concerns. *Sandage v. Board of Commissioners of Vanderburgh County,* 897 N.E.2d 507, 512 (Ind.App.2008). 'Imposition of a duty is limited to those instances where a reasonably foreseeable victim is injured by a reasonably foreseeable harm.' *Sandage,* 897 N.E.2d at 512 (citing *Webb v. Jarvis,* 575 N.E.2d 992, 995 (Ind. 1991)). '[T]he master may subject himself to liability ... by retaining in his employment servants who, to his knowledge, are in the habit of misconducting themselves in a manner dangerous to others.' *Sandage,* 897 N.E.2d at 512." 273 F.R.D. 532, 538 (N.D.Ind.2011), *see also* 27 Am.Jur.2d *Employment Relationship* § 396 (2004).

[¶ 25] The district court explained:

"Fuchs allegedly had inappropriate encounters with Richard on four occasions. Prior to the third incident, there was no evidence to show the District knew or should have known of Fuchs' misconduct. However, Connie Kelsch reported the third incident to Holly Becker, the elementary school principal. The District's written policy for reporting sexual harassment encourages people to 'report the alleged acts immediately to the appropriate building principal ...' The District contends that Glenn Weinmann, the high school principal, was the 'appropriate building principal'. However, a reasonable inference from the facts indicate[s] Connie complied with the District's written policy because the elementary school and high school are connected.... The evidence shows the District failed to address the matter with Fuchs after Connie Kelsch's report. Two month[s] later Fuchs, again, made inappropriate contact with Richard. There is sufficient evidence to demonstrate that material questions of fact exist regarding Richard's negligent supervision claim. Because there are questions of

fact, dismissal as a matter of law is inappropriate.

"There is sufficient evidence to show that the District knew or should have known about Fuchs' misconduct after Connie Kelsch's report in February, 2003. The District failed to address the misconduct and Fuchs later had inappropriate contact with Richard. The evidence sufficiently supports the claim for negligent retention because a reasonable person could decide that the District should have terminated Fuchs after the February, 2003, incident. The District's motion to dismiss Richard's claim for negligent retention as a matter of law is denied."

[¶ 26] Viewing the evidence in the light most favorable to Richard, we agree with the district court that the District did not meet its burden of showing no genuine issues of material fact existed or of showing that it is entitled to judgment as a matter of law regarding Richard's claims of negligent supervision and retention.

### III

[¶ 27] We need not decide other issues raised because they are unnecessary to our decision in this case. We affirm the district court's dismissal of Richard's claims for negligent hiring and assault and battery. We reverse dismissal of Richard's claims for negligent supervision and retention and remand for further proceedings.

[¶ 28] GERALD W. VANDE WALLE, C.J., GARY H. LEE, D.J., MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.

[¶ 29] The Honorable GARY H. LEE, D.J., sitting in place of SANDSTROM, J., disqualified.